

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-18-1997

# Orban v. Vaughn

Precedential or Non-Precedential:

Docket 96-2116

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Orban v. Vaughn" (1997). *1997 Decisions.* Paper 195.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/195

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

iled August 18, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-2116

ATTILA ORBAN

v.

DONALD T. VAUGHN; DISTRICT ATTORNEY FOR
PHILADELPHIA COUNTY; THE ATTORNEY GENERAL OF
THE STATE OF PENNSYLVANIA,

Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 95-05962)

Argued June 26, 1997

BEFORE: GREENBERG and MCKEE, Circuit Judges,
and GREENAWAY,* District Judge

(Filed: August 18, 1997)

Jeffrey M. Miller
Carmen C. Nasuti (argued)
Nasuti & Miller
21 South 5th Street
The Bourse Building
Suite 860
Philadelphia, PA 19106

 Attorneys for Appellee

_____

*Honorable Joseph A. Greenaway, Jr., Judge of the United States
District Court for the District of New Jersey, sitting by designation.

Donna G. Zucker (argued)
Chief, Federal Litigation
Ronald Eisenberg
Deputy District Attorney
Law Division
Arnold H. Gordon
First Assistant District Attorney
Lynne Abraham
District Attorney
1421 Arch Street
Philadelphia, PA 19102-1582

 Attorneys for Appellant

**OPINION OF THE COURT**

GREENBERG, <u>Circuit Judge</u>.

Respondents, Donald T. Vaughn, the District Attorney of Philadelphia County, and the Attorney General of Pennsylvania, whom we will call collectively the Commonwealth of Pennsylvania, appeal from an order entered November 6, 1996, in the district court in favor of petitioner, Attila Orban. The district court order granted Orban's petition for a writ of habeas corpus to the extent of vacating his convictions and sentences entered in state court following a nonjury trial for aggravated assault and recklessly endangering another person (two counts on each charge) arising out of a motor vehicle accident in which three people were killed and two others injured. The district court predicated its order on its conclusion that the vacated convictions were not supported by sufficient evidence. The order in all other respects denied Orban's petition. It also directed that he be released from custody unless the state court resentenced him on his remaining convictions arising from the accident. We reject the district court's conclusion that the convictions were not supported by sufficient evidence. Therefore, we will reverse the order of the district court to the extent that it granted Orban habeas corpus relief.

2

## I. JURISDICTION AND STANDARD OF REVIEW

Orban brought this action under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. On this appeal, we exercise plenary review over the district court's legal conclusions. Alston v. Redman, 34 F.3d 1237, 1242 (3d Cir. 1994). Furthermore, inasmuch as the district court relied on the state court record in concluding that the evidence was insufficient to support the convictions, we will exercise plenary review of that conclusion. See Jackson v. Byrd, 105 F.3d 145, 147 (3d Cir.), cert. denied, 117 S.Ct. 2442 (1997).

## II. FACTUAL HISTORY

On Sunday, April 20, 1990, Orban was traveling north in his truck on Interstate 95 in Philadelphia. He drove his vehicle across three lanes of traffic and then hit and crossed the guardrail and struck a car heading south. Three occupants of the car hit by Orban were killed and the other two were injured seriously.

Several eyewitnesses testified at the nonjury trial in this case. Edmond F. McGowan, who also was driving north on Route 95, observed Orban's truck rapidly approaching from his rear, traveling at approximately 65-70 miles per hour. When McGowan observed Orban "going back and forth" within the right hand lane and even crossing the dotted line into the next lane, he changed lanes to avoid Orban's vehicle. After Orban passed McGowan, McGowan saw Orban proceeding in the right hand lane for one quarter mile without weaving. Then McGowan saw Orban suddenly make a 90-degree turn across all lanes of traffic and into and over the guardrail. Frank Sprangle and Steven Siegel testified that they observed Orban weaving in traffic and suddenly hit and jump over the guardrail.

At the scene of the accident Orban offered three different explanations for his behavior. He said that someone had struck his truck from behind, a friend had been driving the truck, and he must have fallen asleep at the wheel. Orban, however, later abandoned these explanations. At trial, he stated that his truck may have been hit from behind causing his head to hit the windshield, and he may have

3

experienced a diabetic seizure which rendered him
unconscious and unable to control the vehicle.

III. PROCEDURAL HISTORY

Based on these facts, the state trial judge convicted
Orban of three counts of homicide by vehicle, two counts of
aggravated assault, and two counts of recklessly
endangering another person. Commonwealth v. Orban, Nos.
1698-1707, Feb. Term, 1991 (Phil. C.P. 1991). The court
sentenced Orban to a total sentence of 7 to 15 years for the
aggravated assault and homicide by vehicle convictions, but
suspended his sentence on the reckless endangerment
counts. On July 3, 1992, the trial judge filed a
comprehensive opinion explaining why its verdict should
not be disturbed.

Orban appealed to the Pennsylvania Superior Court
where he claimed that the verdict was against the weight of
the evidence and that the evidence was insufficient to
support the verdict. He further contended that his counsel
ineffectively represented him at trial because he failed to
present a defense of unconsciousness brought about by
diabetic seizure. In January 1993, the Superior Court filed
an opinion affirming Orban's convictions. The court
concluded that Orban waived his argument with respect to
the weight of the evidence, which in any event was
meritless, and that the ineffective assistance of counsel
claim failed for lack of specificity. Commonwealth v. Orban,
626 A.2d 648 (Pa. Super. Ct. 1993) (table). The court did
not make a specific disposition of Orban's insufficiency of
evidence argument, though it plainly rejected that
argument, indicating that the trial court's post-trial opinion
"properly and adequately" addressed the issues he raised.
In that opinion, the trial court found that the
Commonwealth proved Orban's guilt beyond a reasonable
doubt. Of course, the Superior Court's conclusion that the
verdict was not against the weight of the evidence
necessarily meant that it concluded that the evidence was
sufficient to support the verdict. Orban then filed a petition
for allocatur with the Pennsylvania Supreme Court which
that court denied. Orban v. Commonwealth, 627 A.2d 180
(Pa. 1993) (table).

4

In February 1994, Orban filed an action in the common pleas court under the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541 (West Supp. 1997), seeking relief from his convictions, but the common pleas court dismissed that action. Commonwealth v. Orban, No. 1698-1707, Feb. Term, 1991 (Phil. C.P. 1994). In June 1994, Orban appealed to the Pennsylvania Superior Court, claiming that: (1) the trial judge should have ordered PCRA counsel to amend the petition to state a claim other than the previously litigated ineffectiveness claim; (2) trial counsel was ineffective for failing to call Orban's physician as a witness to testify regarding his diabetic condition; and (3) post-verdict counsel was ineffective for failing to present his physician and trial counsel at the hearing on the post-verdict motions. On March 8, 1995, the Superior Court affirmed the denial of PCRA relief. Commonwealth v. Orban, No. 2387 Phil. 1994 (Pa. Super. Ct. 1995).

Orban then filed a petition for allocatur with the Pennsylvania Supreme Court. While that petition was pending he also filed a petition in the Supreme Court seeking leave to supplement his petition for allocatur so that he could rely on Commonwealth v. O'Hanlon, 653 A.2d 616 (Pa. 1995), which the Supreme Court decided shortly before the Superior Court affirmed the order denying him PCRA relief. Orban understandably wanted to rely on O'Hanlon as that case defined recklessness in an aggravated assault case in a rather confined manner. The Supreme Court denied both the petition to supplement and the petition for allocatur on July 26, 1995. Commonwealth v. Orban, No. 0251 E.D. Alloc. Docket (Pa. 1995).

Orban then filed this habeas corpus action in the district court in September 1995, claiming that:

1. the evidence was insufficient to sustain his convictions for aggravated assault and reckless endangerment;

2. the trial court deprived him of due process by inferring that petitioner was driving in a reckless manner;

3. trial counsel was ineffective in failing to call a physician who could have testified in support of

petitioner's defense that petitioner's diabetic condition was a possible cause of the accident; and

4. PCRA counsel was ineffective because he presented in the collateral action a claim of ineffective counsel that had been resolved on direct appeal.

The district court referred the petition to a magistrate judge, who issued a report on February 5, 1996, recommending its denial. On November 6, 1996, the district court granted the petition in part, based on itsfinding that the evidence was insufficient to support the aggravated assault and reckless endangerment convictions. The court, however, rejected Orban's claims regarding the homicide by vehicle counts and ineffective assistance of counsel, and he has not cross-appealed to advance those claims before us. The district court stayed execution of its order to give the Commonwealth an opportunity to appeal, which it did, on December 6, 1996.1

## IV. DISCUSSION

For Orban to raise a claim in federal court, he must have presented the claim at each level of the state courts. See Doctor v. Walters, 96 F.3d 675, 678 (3d. Cir. 1996). In his federal habeas corpus action, Orban raised the applicability of the definition of recklessness in an aggravated assault action as set forth in Commonwealth v. O'Hanlon, 653 A.2d 616. But the first time Orban specifically raised the applicability of O'Hanlon in the state courts was when he sought to supplement his second petition for allocatur in the Supreme Court. However, Orban could not have raised O'Hanlon much earlier because the Supreme Court decided O'Hanlon less than two months before the Superior Court affirmed the order denying Orban's PCRA motion. The district court entertained Orban's O'Hanlon argument as it

---

1. The district court order was procedurally defective because it "vacated" Orban's conviction and dismissed the charges against him with prejudice. The court could not grant such relief in a proceeding under 28 U.S.C. § 2254. See Fay v. Noia, 372 U.S. 391, 430-31, 83 S.Ct. 822, 844 (1963); Barry v. Brower, 864 F.2d 294, 300-01 (3d Cir. 1988); Rimmer v. Fayetteville Police Dep't, 567 F.2d 273, 276-77 (4th Cir. 1977).

6

found the argument to be substantially the same as the legal theory Orban argued throughout his state proceedings, i.e., that his actions " `lack[ ] the indicators of deliberate . . . disregard found necessary by the Pennsylvania Supreme Court in O'Hanlon.' " While the Commonwealth challenges this conclusion by the district court, we will assume without deciding that it was correct and we will consider O'Hanlon in deciding this case.2

Orban contends that the Commonwealth's evidence was insufficient to sustain his convictions for aggravated assault and recklessly endangering another person because the Commonwealth did not prove that he possessed the requisite mental state to be guilty of those offenses. Thus, in his view, his convictions on these charges denied him due process of law. See Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S.Ct. 2781, 2787 (1979). On this appeal we determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319, 99 S.Ct. at 2789. We must apply the above standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16, 99 S.Ct. at 2792 n.16.

Under Pennsylvania Law, a person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa. Cons. Stat. Ann. § 2702 (a)(1)(West Supp. 1997). Inasmuch as the Commonwealth does not argue that Orban acted intentionally or knowingly, our inquiry is whether the

_____

2. As in Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997), the parties have briefed the case and the district court decided the case without reference to the Antiterrorism and Effective Death Penalty Act of 1966, Pub. L. No. 104-132, 110 Stat. 1214 (1996), even though the district court decided the case after the effective date of the act, April 24, 1996. They may have been prescient in that regard. See Lindh v. Murphy, 117 S.Ct. 2059 (1997). We, too, will decide the case without reference to that Act which certainly cannot have strengthened Orban's position. See Johnson, slip op. at 9.

evidence supported a conclusion that Orban acted recklessly in circumstances manifesting extreme indifference to the value of human life. The statutory definition of recklessness is that:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct a reasonable person would observe in the actor's situation.

18 Pa. Cons. Stat. Ann. § 302(b)(3)(West 1983).

O'Hanlon sets forth the degree of recklessness required to support an aggravated assault conviction under Pennsylvania law:

[M]ere recklessness is insufficient to support a conviction for aggravated assault, which requires a higher degree of culpability, i.e., that which considers then disregards the threat necessarily posed to human life by the offending conduct. There must be an element of deliberation or conscious disregard of danger not present to the same extent in, e.g., either reckless endangerment . . . or driving while intoxicated.

O'Hanlon, 653 A.2d. at 618. For a defendant to act with the degree of recklessness required for an aggravated assault conviction, the offensive act must be performed under circumstances which "almost insure that injury or death will ensue . . . . This state of mind is, accordingly, equivalent to that which seeks to cause injury . . . only one step short of murder. Aggravated assault is, indeed, the functional equivalent of a murder in which, for some reason, death fails to occur." Id. at 618. In O'Hanlon, the defendant ran a red light while he was driving drunk and hit another vehicle, seriously injuring the other driver and himself. The Pennsylvania Supreme Court found that the defendant's behavior was not so egregious to be considered the equivalent of homicide. Id. at 618.

8

The O'Hanlon court discussed a number of cases in which defendants had the state of mind required under 18 Pa. Cons. Stat. Ann. § 2702(a)(1) to be guilty of aggravated assault. See Commonwealth v. Daniels, 354 A.2d 538 (Pa. 1976) (defendant fired a gun into crowd killing one man and injuring another); Commonwealth v. Laing, 456 A.2d 204 (Pa. Super. Ct. 1983) (defendant drove car into a crowd after having aimed it at one individual and then hit two people).

Most similar to this case is Commonwealth v. Scofield, 521 A.2d 40 (Pa. Super. Ct. 1987). In Scofield, the defendant's car "scrap[ed] up against the left front bumper [of a car] that was parked on the east side of Broad Street . . . . [The car] traveled another ten feet in this manner before swerving onto to the sidewalk and striking a building." Id. at 41. During this incident, the defendant ran over and severely injured a pedestrian. Afterwards, the defendant attempted to put his car in reverse and drive away. Id. at 41. The court found that Scofield's erratic driving prior to the accident established that he was reckless, and his actions in leaving the scene showed that he was fully aware of what had occurred. Id. at 42.

A reasonable fact finder could conclude that Orban's actions were even more egregious than the actions of the defendant in Scofield. After driving unpredictably in a much longer distance than the distance involved in Scofield, Orban drove his truck across three lanes of traffic and hit the guardrail. The truck then flew through the air, landing on top of a car. Orban's erratic driving prior to the accident, which caused McGowan to take steps to avoid him, and his inexplicable driving at the time of the accident, show that he exhibited the conscious disregard of danger required by O'Hanlon to sustain the conviction for aggravated assault. Furthermore, unlike the defendant in O'Hanlon who was drunk at the time of the accident, there was no explanation for Orban's conduct that might negate the required mens rea for recklessness under the statute. As the state trial court said in its July 3, 1992 opinion, "[Orban] offered no plausible reason for this criminally negligent and reckless behavior." The evidence is therefore sufficient to establish Orban's guilt beyond a reasonable doubt, and thus his

9

conviction for aggravated assault was proper even under O'Hanlon. In short, we see no reason why the state court could not judge the character of Orban's act, i.e., his reckless disregard of human life, by what he did even though there is no explanation for why he did it.

We recognize that in a motor vehicle collision case it would be expected that a driver rarely would have the state of mind necessary to sustain a conviction for aggravated assault. After all, completely noncriminal driving can bring about the most disastrous consequences. Nevertheless, there is no question but that a driver can commit an aggravated assault. In this unusual case, the absence of circumstances sufficient to negate the required mens rea justified the trial court in concluding that Orban acted with the state of mind required by O'Hanlon to be guilty of aggravated assault.

Orban also contends that his convictions for recklessly endangering another person were based upon insufficient evidence in violation of due process. Reckless endangerment consists of "recklessly engag[ing] in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa. Cons. Stat. Ann. § 2705 (West 1983). Unlike aggravated assault, however, a conviction for recklessly endangering another person does not require that the prosecution show that the defendant acted in "circumstances manifesting extreme indifference to the value of human life."

Orban's actions justified his convictions for reckless endangerment. Pennsylvania courts frequently have found that motor vehicle drivers exhibited the required level of recklessness while driving to justify a conviction for recklessly endangering another person. In In Interest of Becker, 536 A.2d 1370 (Pa. Super. Ct. 1988), the defendant and his friend were in separate cars traveling either side by side or closely following one another. Id. at 1372-73. While the friend's car ran a red light and killed the driver of a different car, the defendant stopped at the light and was in the correct driving lane. Id. at 1371. However, the evidence of the defendant's uncontrolled driving prior to the accident

was sufficient to support a finding that the defendant recklessly endangered other drivers on the road. 3

In Commonwealth v. Henck, 478 A.2d 465 (Pa. Super. Ct. 1984), a police officer stopped the defendant for driving straight through an intersection rather than turning right as the road required. Then, as the officer returned to his vehicle, the defendant sped away, ran a stop sign, and cut off several other vehicles. The court found that the evidence of the defendant's running through a stop sign and blocking the path of other drivers while fleeing from a police officer was sufficient to sustain a conviction for recklessly endangering another person even though no one was injured. See also Commonwealth v. Peer, 684 A.2d 1077 (Pa. Super. Ct. 1996) (possessing and brandishing a weapon, combined with a struggle over control of the weapon and a threat to kill two people, was sufficient to convict the defendant for recklessly endangering another person).

The facts in this case were more dramatic than those in the cases we discuss above and demonstrate that Orban's convictions for recklessly endangering another person were proper. Orban was in his truck cutting across multiple lanes of traffic just prior to the accident, and in doing so he posed an extremely dangerous threat to other drivers. Orban's erratic driving which resulted in the death of three people and injury to two others establishes that the evidence justified the convictions for recklessly endangering another person.

V. CONCLUSION

We are satisfied that Orban's actions justify his convictions for aggravated assault and for recklessly endangering another person. The district court's order entered November 6, 1996, to the extent it granted Orban's petition for habeas corpus and vacated his convictions for aggravated assault and recklessly endangering another

_____

3. The Superior Court nevertheless reversed his adjudication of delinquency on the ground that he had not been charged properly with the offense of which he was convicted.

11

person will be reversed. Thus, we will remand the case to the district court to enter an order reinstating the judgment of conviction and sentence entered in the state court.

A True Copy:
Teste:

<u>Clerk of the United States Court of Appeals</u>
<u>for the Third Circuit</u>

12