

1999 Decisions

**Opinions of the United States Court of Appeals for the Third Circuit**

5-13-1999

# Baker v. Barbo

Precedential or Non-Precedential:

Docket 97-5687

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"Baker v. Barbo" (1999). *1999 Decisions.* Paper 123.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/123

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 13, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-5687

JAMES BAKER,

      Appellant

v.

JAMES F. BARBO;
ATTORNEY GENERAL OF
THE STATE OF NEW JERSEY

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 96-01745)
District Judge: Honorable Joseph A. Greenaway, Jr.

Argued March 23, 1999

BEFORE: GREENBERG and ROTH, Circuit Judges,
and POLLAK,* District Judge

(Filed: May 13, 1999)

      Theodore Sliwinski (argued)
      45 River Road
      East Brunswick, NJ 08816

      Attorney for Appellant

_____

*Honorable Louis H. Pollak, United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

          Thomas V. Manahan
          Prosecutor of Union County
          Steven J. Kaflowitz (argued)
          Assistant Prosecutor
          Office of Prosecutor of Union County
          Union County Administration
           Building
          Elizabeth, NJ 07207

           Attorneys for Appellee

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

On this appeal we review the district court's order denying James Baker's petition for a writ of habeas corpus filed under 28 U.S.C. S 2254. Baker, who has been incarcerated since February 12, 1987, contends that he received ineffective assistance of counsel in violation of his rights under the Sixth Amendment and that his resentencing to a greatly enhanced sentence following his unsuccessful appeal of his convictions violated his right to due process under the Fourteenth Amendment. We have jurisdiction under 28 U.S.C. S 1291, and will affirm the denial of the writ for the reasons which follow.

II. BACKGROUND

On March 19, 1987, a New Jersey grand jury indicted Baker together with co-defendant Stephen L. Garry for two sets of crimes committed on the evening of January 7, 1987, in Elizabeth, New Jersey: the robbery and attempted abduction of Elizabeth Soto and the abduction, kidnaping, and aggravated sexual assault of M.B., a 15-year old girl. Together, these incidents constituted second degree robbery in violation of N.J. Stat. Ann. S 2C:15-1 (West 1995); attempted kidnaping in violation of N.J. Stat. Ann.S 2C:5-1 (West 1995) and N.J. Stat. Ann. S 2C:13-1b (West 1995);

2

criminal restraint in violation of N.J. Stat. Ann.S 2C:13-2 (West 1995); first degree kidnaping in violation of N.J. Stat. Ann. S 2C:13-1b; and aggravated sexual assault in violation of N.J. Stat. Ann. S 2C:14-2a (West Supp. 1998).

Baker and Garry committed the first crime at approximately 8:00 p.m. on January 7, 1987. At that time Baker, who was driving a stolen car, and Garry, his passenger, pulled up alongside Soto, who was leaving a store. Garry jumped out and chased Soto. A struggle then ensued after Soto unsuccessfully tried to run away. Garry dragged Soto into the middle of the road toward the car. She told Garry to take her purse, but he said, "no, we want you." Soto then began to hit and kick Garry and called for help, and, after a ten-minute struggle during which Garry took Soto's purse, Garry jumped back into the car, and he and Baker drove off. A witness saw the struggle and the police were called. They arrived minutes later and began a search for the car.

Meanwhile, about a mile away, Garry and Baker pulled up along side 15-year-old M.B. sometime after 8:30 p.m. as she was walking home from a friend's house. One of the two men pulled M.B. into the backseat of the car and over the next two hours Garry raped her twice and Baker forced her to perform fellatio on him and attempted to rape her. They then released her onto the street, and she made her way home. Her mother took her to a police station and then to a hospital. Subsequently, the police arrested both men and the grand jury indicted them for the offenses we have described.

The heart of this appeal lies in the fact that at the time of Baker's offenses, indictment, trial, and sentencing a new law was in effect which required a mandatory minimum term of incarceration of 25 years in this case. Under N.J. Stat. Ann. S 2C:13-1c (West 1995) the sentencing range for first degree kidnaping until one month before Baker's offenses had been 15 to 30 years without any requirement for a mandatory period of parole ineligibility. 1979 N.J. Laws c. 178, S 23. However, on December 8, 1986, the Legislature amended this section by enacting 1986 N.J. Laws c. 172, S 2, to provide that a person found guilty of kidnaping a victim under 16 years of age against whom a

3

sexual assault under N.J. Stat. Ann. S 2C:14-2 or N.J. Stat. Ann. S 2C:14-3a is committed, shall be sentenced to a term of between 25 years and life imprisonment with 25 years of parole ineligibility. N.J. Stat. Ann. S 2C:13-1c(2)(a) (West 1995). Inasmuch as M.B. was under 16 and Baker and Garry sexually assaulted her during the kidnaping, the law required their sentencing upon conviction to an imprisonment term of at least 25 years without parole.

Nevertheless, the prosecution, unaware of the amendment to N.J. Stat. Ann. S 2C:13-1c, offered Garry a plea bargain under which he would receive an aggregate custodial sentence of no more than 30 years with 15 years of parole ineligibility, conditioned upon Garry pleading guilty and "testifying truthfully" against Baker. Garry accepted this offer and thus pleaded guilty. The trial court, also unaware of the amendment, sentenced Garry to an aggregate custodial term of 30 years with 15 years of parole ineligibility.

The State offered Baker the same plea bargain: a maximum term of 30 years with 15 years of parole ineligibility. Baker declined this offer, however, and chose to go to trial because his attorney advised him that he had nothing to gain from accepting the plea: if he went to trial the maximum sentence he faced was 30 years with 15 years of parole ineligibility -- the very same "deal" the State was offering. Baker's attorney, like the court and the prosecutor, was, of course, unaware of the change in the law.

After a two-day trial, a jury on September 10, 1987, found Baker guilty of robbery, attempted kidnaping, kidnaping and aggravated sexual assault. The court dismissed the charge of criminal restraint. On December 4, 1987, the court, unaware of the change in the law, sentenced Baker to concurrent nine-year terms of imprisonment with three-year terms of parole ineligibility for robbery and attempted kidnaping and a consecutive 18-year term of imprisonment with an eight-year term of parole ineligibility for kidnaping. The court merged Baker's conviction for aggravated sexual assault into his conviction for kidnaping. Thus, the court sentenced Baker to an aggregate custodial term of 27 years with 11 years of parole

ineligibility. Accordingly, both Baker and Garry received illegal sentences.

Baker filed an untimely notice of appeal from his conviction on July 18, 1988, but the Appellate Division of the New Jersey Superior Court, entered an order on February 22, 1989, authorizing the appeal to befiled nunc pro tunc. Baker asserted various trial errors on appeal, but when he filed the appeal he still was unaware of the sentencing amendment on the kidnaping charge. However, on August 21, 1989, the State filed a motion for leave to file a cross-appeal nunc pro tunc, contending that Baker's sentence for kidnaping was illegal because of the change in law prior to the commission of the offenses.1 The Appellate Division granted that motion on September 12, 1989. Then, in an unpublished per curiam opinion filed on January 2, 1990, the Appellate Division affirmed Baker's convictions and, inasmuch as it agreed with the State that Baker was subject to the 25-year parole disqualifier, it remanded the case to the trial court for reconsideration of the sentence. State v. Baker, No. A-5384-87T4 (N.J. Super. Ct. App. Div. Jan. 2, 1990).

Baker moved in the Appellate Division for reconsideration of the order remanding the case for reconsideration of his sentence, but the court denied his motion on February 27, 1990, stating that the trial court could address the issues he raised in the motion when it reconsidered Baker's sentence. The New Jersey Supreme Court denied Baker's petition for certification on June 13, 1990. State v. Baker, 584 A.2d 246 (N.J. 1990).

Baker then filed a petition for post-conviction relief in the

_____

1. The State has not attempted to have the state court correct Garry's sentence because, as it explained at argument before us, if the court increased Garry's sentence, he would be entitled to have his guilty plea vacated and to go to trial. Thus, Garry's position differed from that of Baker who did go to trial. See State v. Baker, 636 A.2d 553, 565 (N.J. Super. Ct. App. Div. 1994). The State was not willing to run the risk of another trial because by the time it discovered the error considerable time had elapsed from the time of the offenses. Moreover, it did not wish to require the victims to face the trauma of a second trial. Garry, of course, has not challenged his illegal sentence.

trial court on March 27, 1991, alleging that he had been denied effective assistance of counsel and that he had been denied due process and equal protection of the law because the State had entered into a plea bargain with Garry under which Garry testified against Baker in exchange for an illegally short sentence. After an evidentiary hearing, the trial court denied his petition on October 7, 1991.

On February 19, 1992, the trial court resentenced Baker to a 25-year term of imprisonment without eligibility for parole for kidnaping and concurrent nine-year terms of imprisonment with three-year periods of parole ineligibility for robbery and attempted kidnaping. The court merged Baker's conviction for aggravated sexual assault into his conviction for kidnaping. Thus, the court resentenced Baker to an aggregate custodial term of 25 years without eligibility for parole, more than doubling the period of parole ineligibility it had imposed in the original sentence.

Baker filed separate notices of appeal from the denial of his petition for post-conviction relief and from the judgment entered on his resentencing. The Appellate Division consolidated these appeals on December 30, 1992, and affirmed Baker's convictions on January 21, 1994, over a dissent. State v. Baker, 636 A.2d 553 (N.J. Super. Ct. App. Div. 1994). On further appeal, the Supreme Court of New Jersey, on October 27, 1994, affirmed the decision of the Appellate Division with one justice dissenting. State v. Baker, 648 A.2d 1127 (N.J. 1994).

Baker filed a petition for a writ of habeas corpus on April 23, 1996, pursuant to 28 U.S.C. S 2254 in the district court but the court denied the petition in an order entered September 24, 1997. Baker then appealed.2  As the district court relied entirely on the state court record and did not hold an evidentiary hearing, we exercise plenary review of

_____

2. We note that the appellees did not argue in the district court that any of Baker's claims were not exhausted in the state courts and the district court rejected them on the merits. We are satisfied from our examination that Baker's claims have been exhausted. Inasmuch as Baker filed his petition before the enactment of the Antiterrorism and Effective Death Penalty Act, the provisions of that statute are not applicable here. See United States v. Skandier, 125 F.3d 178, 182 (3d Cir. 1997).

the habeas proceeding. 28 U.S.C. S 2254; see, e.g., Zettlemoyer v. Fulcomer, 923 F.2d 284, 291 n.5 (3d Cir. 1991).

III. DISCUSSION

A. Denial of Effective Assistance of Counsel

Baker argues that he was denied effective assistance of counsel in violation of the Sixth Amendment because of his attorney's ignorance of the statutory sentencing amendment during the plea negotiations and because his attorney made various errors during the trial. Baker contends that his attorney's ignorance of the sentencing law caused him to pass up the opportunity to plead guilty and to be sentenced to a 30-year term with a 15-year limit of parole ineligibility.3 Inasmuch as we find that his contentions with respect to his representation at trial are clearly without merit, we confine our discussion to the significance of his attorney's ignorance of the sentencing law.

We start our discussion of the Sixth Amendment issues by pointing out that a defendant's right to effective counsel includes the period of his representation during a plea process as well as during a trial. Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 370 (1985). Accordingly, we judge this unusual case by applying the ordinary standards for granting relief when a defendant claims that he received ineffective assistance of counsel. Thus, to prevail on his claim Baker must satisfy a two-prong test. First, he must show that his attorney's performance was "deficient," that is, "that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment . . . ." Strickland v. Washington,

_____

3. In his brief, Baker contended that he is entitled to be sentenced to a 27-year term with an 11-year period of parole ineligibility. This request for relief obviously is dependent upon the reimposition of the sentence the trial court imposed following his conviction at trial and thus is not consistent with his theory that he never should have stood trial. At oral argument, his attorney conceded that his claim should be for the imposition of a 30-year sentence with a 15-year period of parole ineligibility.

7

466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). Next, he must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068. Of course, inasmuch as Baker's contentions regarding trial error are meritless, a different result can mean only that in the absence of his attorney's ignorance of the amendment of the sentencing law, Baker would have pleaded guilty and the court would have sentenced him to a shorter sentence than that it ultimately imposed.

We agree with Baker that his trial attorney's error with respect to his ignorance of the sentencing law has satisfied the first prong of the Strickland test. Strickland, 466 U.S. at 688, 690, 104 S.Ct. at 2064-65. While we realize that this case is extraordinary in that the state trial judge 4 and the prosecutor also did not know of the change in the law even at the time of Baker's sentencing almost one year after the enactment of the amendment, still we must hold that an attorney who does not know the basic sentence for an offense at the time that his client is contemplating entering a plea is ineffective.5

Baker, however, has not met the second Strickland prong -- a showing that there is a "reasonable probability that, but for" the error there might have been a different result. The "reasonable probability" test is not a stringent one. See Nix v. Whiteside, 475 U.S. 157, 175, 106 S.Ct. 988, 998 (1986) (reasonable probability standard less demanding than preponderance standard). We have recognized that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992) (quoting Strickland,

_____

4. In fact three different Superior Court judges were unaware of the change in the law, the judge who accepted Garry's plea of guilty, the judge who sentenced Garry, and the judge who sentenced Baker.

5. Our opinion must not be overread. We recognize that the ascertaining of a sentence for an offense can be a difficult matter, particularly in the
federal courts where sentence calculations can be quite complex and can depend on facts not ascertained when the defendant pleads to the offense. Here, however, the sentence required for the offense was straightforward as counsel had only to examine the latest statutory amendments to determine it.

8

466 U.S. at 694, 104 S.Ct. at 2068). But Baker's arguments as to prejudice are totally speculative and do not meet that standard.

We have held that an attorney can be ineffective by giving a defendant false information about sentencing, thereby inducing the defendant to plead guilty instead of going to trial. See Meyers v. Gillis, 142 F.3d 664 (3d Cir. 1998). In Meyers we found that a defense attorney was mistaken in informing his client that he would be eligible for parole in a case where the offense to which the defendant pled guilty carried a mandatory life sentence. We reasoned that there was prejudice because there was evidence that, but for the attorney's advice, the defendant would not have pled guilty, and might have been convicted of a lesser offense. Id. at 664. Similarly, there can be no doubt that an attorney can be ineffective in giving his client advice which leads him to turn down a favorable plea agreement if the attorney is not aware of the applicable basic sentencing law. Here, however, Baker has not shown that if his attorney had been aware of the sentencing law he might have obtained a sentence of 30 years with a 15-year term of parole ineligibility by pleading guilty or, indeed, obtained a sentence for any period less than that the court ultimately imposed.

If Baker's attorney had known of the sentencing amendment he would have had the professional duty to alert the State and the court of the amendment because a defendant cannot bargain for an illegal sentence. See, e.g., In re Norton, 608 A.2d 328, 338 (N.J. 1992); State v. Nemeth, 519 A.2d 367, 368 (N.J. Super. Ct. App. Div. 1986) ("[T]here can be no plea bargain to an illegal sentence."); see also N.J. Rule of Professional Conduct 3.3(a)(3) ("A lawyer shall not knowingly fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel."); 3.3(a)(5) ("A lawyer shall not knowingly fail to disclose to the tribunal a material fact with the knowledge that the tribunal may tend to be misled by such failure."). Therefore, if Baker's attorney had known of the correct sentence for the kidnaping, and thus had been an effective counsel, Baker

9

could not have accepted the plea offer as it required him to plead guilty to first degree kidnaping in circumstances in which the applicable statute required a sentence with a 25-year mandatory period of parole ineligibility.

It therefore follows that, if his attorney had not been ineffective, Baker could have obtained a 30-year sentence with a 15-year period of parole ineligibility only if his attorney could have negotiated for a dismissal of the kidnaping count. But it is mere speculation to think that he could have done so. After all, Baker cannot demonstrate that there was a reasonable probability that the prosecutor would have negotiated a plea agreement that would frustrate the Legislature's then recently adopted requirement for a 25-year period of parole ineligibility in the circumstances of this case. Furthermore, even if Baker could have negotiated the agreement with the prosecutor, it could have been implemented only with the consent of the trial court because New Jersey state court practice permits the trial court to reject a guilty plea even when tendered pursuant to a plea agreement. See N.J. Ct. R. 3:9-2; 3:9-3. While we never can know whether the trial court would have accepted the hypothetical plea agreement, the Appellate Division on Baker's second appeal indicated that it was unwilling to "frustrate [the] legislative directive" for a 25-year period of parole ineligibility. Thus, for that reason, among others, it upheld the resentencing. Baker cannot demonstrate that there is a reasonable probability that a trial court's attitude would have been any different. State v. Baker, 636 A.2d at 564.

In considering whether there was a reasonable probability that Baker would have been able to negotiate for a dismissal of the kidnaping charge, it is important to recognize how severe the prosecutor's bargaining position had been. During the negotiations the parties believed that the proposed plea agreement which included a 30-year term with a 15-year period of parole ineligibility was the maximum sentence for the kidnaping offense. See N.J. Stat. Ann. S 2C:13-1c; N.J. Stat. Ann. S 2C:43-6b (West 1995). Indeed, while it was possible that by reason of the imposition of consecutive sentences on separate counts that upon Baker's conviction the court could have imposed

10

a longer custodial term, see State v. Baker, 636 A.2d at 561, the proposed sentence was so long that Baker's attorney advised him that he had nothing to lose by going to trial.

Moreover, the court upon Baker's conviction sentenced him to a 27-year term with an 11-year period of parole ineligibility, in a sense vindicating Baker's attorney's position which, in the absence of the sentencing amendment, would have been unassailable. It is, of course, unusual for a court to sentence a defendant upon his conviction at trial to a shorter sentence than that offered prior to trial6 and the court's action plainly demonstrates that the prosecutor in his sentencing offer was not being lenient with Baker. In view of this attitude, Baker cannot demonstrate that if the prosecutor had known of the 25-year mandatory period of parole ineligibility, he would have been willing to enter into a plea agreement which included a dismissal of the kidnaping charge. Plainly, the reasonable inference we draw from the objective evidence is exactly to the contrary. Thus, Baker cannot demonstrate that there is a reasonable probability that his attorney's error had any effect on the outcome of the case.

We recognize that the district court did not conduct an evidentiary hearing in this case and that sometimes it is necessary for the court to hold such a hearing to resolve disputed questions of fact. But this case does not fall within that category as the nature of Baker's claim is such that his chances for relief must remain nothing more than a possibility. Consequently, we will not remand so that the district court can preside over a charade in which witnesses testify about hypothetical conduct. In these circumstances, we cannot hold that there is a reasonable probability that but for his attorney's error, the result of this case could have been different.7

_____

6. This sentencing approach is well known to all attorneys practicing criminal law and is nothing new. See Comment, The Influence of the Defendant's Plea on Judicial Determination of Sentence, 66 Yale L.J. 204 (1956).

7. We note that the dissent suggests that on a remand the district court could inquire into whether the attorney who, on Baker's behalf, filed his

11

Some context as to the trial testimony is helpful in explaining our decision. The first victim, Soto, tentatively identified Baker as the driver of the car which pulled up beside her and she positively identified Baker at trial. The second victim, M.B., testified that Baker attempted to sexually assault her but that she bit him and that this deterred his attack. While M.B. immediately after the crime did not identify Baker from a photo array, she was able to do so a few weeks later and she identified him at trial. Garry testified for the State that he and Baker committed both crimes, but he testified that he, not Baker, drove the car, and that it was Baker who jumped out to grab Soto and, later that evening, M.B.[8] He also testified that both he and Baker sexually assaulted M.B. in the car. Further, Detective Conrad Cheatham of the Elizabeth Police Department, who arrested Baker, testified that Baker admitted participating in the assault upon Soto, stating that Garry drove the car while he attacked Soto. State v. Baker, 636 A.2d at 558. Given the strength of this evidence, there is no reasonable probability that in order to accommodate Baker the State would have dropped thefirst-degree kidnaping charge if it had been aware of the 25-year

_____

first appeal, was ineffective because he apparently did not advise Baker that he faced a longer sentence by appealing. This appellate attorney, who was an Assistant Deputy Public Defender, had not represented Baker in the plea negotiations and at the trial. The problem with this suggestion, quite aside from any ethical considerations that might have compelled the attorney to share his knowledge of the sentencing error with the state, if he had any such knowledge, is that Baker never has raised this issue in either the state or federal courts. For example, in this court he contends in his brief that his constitutional rights "were violated because he received ineffective counsel during the plea negotiations of his case," "trial counsel was ineffective because he failed
to make sufficient efforts to research the applicable sentencing law," and his "Sixth Amendment rights were violated because the cumulative effect of counsel's errors denied him effective assistance of counsel." His brief makes plain that his reference to the cumulative errors means error at trial.

8. Of course, if the State had been aware of the mandatory sentence, it could not have made the plea agreement it did make with Garry and perhaps his testimony would not have been available in Baker's case.

12

mandatory imprisonment term without parole eligibility or that the court would have approved any such action.

Of course, we cannot replay the events of the pre-trial proceedings. Yet it is clear enough that the Strickland test requires a showing that a defendant has been deprived of a "just result" due to ineffective counsel. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064. The State's cross-appeal to correct the sentence provided Baker with what he would have had if he had received effective representation during the plea stage, the right to be sentenced legally. His attorney's mistake in no way affected the constitutionality of the subsequent trial. The mistake deprived Baker only of the possibility to negotiate for the dismissal of the kidnaping charge, but as we have indicated, he cannot show that he was prejudiced by the loss of this speculative opportunity. Thus, his Sixth Amendment claim must fail.

B. Fundamental Unfairness

Baker argues that his resentencing to the 25-year term of imprisonment without eligibility for parole mandated by N.J. Stat. Ann. S 2C:13-1c(2)(a) violated his right to due process of law. Due process of law comprehends concepts less rigid and more fluid than those provided in specific and particular constitutional guarantees. To show a due process violation, Baker must show that his resentencing was "fundamentally unfair," Burkett v. Cunningham, 826 F.2d 1208, 1221 (3d Cir. 1987), or was "shocking to the universal sense of justice." Kinsella v. United States ex rel. Singleton, 361 U.S. 234, 246, 80 S.Ct. 297, 304 (1960). Baker claims that the parties' and the court's ignorance of the sentencing amendment for kidnaping led to his serving a portion of his sentence before any challenge was made, and that it is unfair that he now should face a longer sentence without parole than he had expected. Of course, Baker's due process argument includes the odd fact that he is claiming a right to illegal treatment.

On the fundamental fairness issue we first consider double jeopardy principles for while they are conceptually distinct from due process principles still to a degree they are informative even here. In Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645 (1947), the trial court inadvertently

13

failed to impose a statutorily mandated fine in sentencing the defendant, but recalled him to impose the omitted fine. Rejecting his contention that this resentencing constituted a violation of the Double Jeopardy Clause, the Court stated:

> This Court has rejected the `doctrine that a prisoner, whose guilt is established, by a regular verdict, is to escape punishment altogether, because the court committed an error in passing the sentence.' The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner. In this case the court`only set aside what it had no authority to do and substitute[d] directions required by the law to be done upon the conviction of the offender.' It did not twice put petitioner in jeopardy for the same offense. The sentence, as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense.

Id. at 166–67, 67 S.Ct. at 649 (citations omitted).

Following Bozza, we have stated that a guilty prisoner cannot "escape punishment because the court committed an error in passing sentence." United States v. Busic, 639 F.2d 940, 946 (3d Cir. 1981) (citing Bozza, 330 U.S. at 166, 67 S.Ct. at 648). See also id. at 948 ("Nothing in the history or policy of the [Double Jeopardy] clause suggests that its purposes included protecting the finality of a sentence and thereby barring resentencing to correct a sentence entered illegally or erroneously."). This principle is true even in cases like Baker's where the prisoner already has begun to serve his sentence. Busic, 639 F.2d at 948 n.11.

Baker nevertheless contends that it is a violation of the Due Process Clause to correct even an illegal sentence when enough time has passed such that the prisoner has some real interest in expecting a certain release date or in fact has been released and faces reincarceration. See Hawkins v. Freeman, 166 F.3d 267, 273–75 (4th Cir. 1999); DeWitt v. Venetoulo, 6 F.3d 32 (1st Cir. 1993); Breest v. Helgemoe, 579 F.2d 95, 101 (1st Cir. 1978). In Breest, the court noted that the power of a sentencing court to correct an invalid sentence "must be subject to some temporal

14

limit." Breest, 579 F.2d at 101. According to the court, "[a]s the months and years pass," the expected release date acquires "a real and psychological critical importance" to the inmate. Id. After a "substantial period of time" passes, "it might be fundamentally unfair . . . to alter even an illegal sentence in a way which frustrates a prisoner's expectations [of release]." Id.

Baker's reasonable expectations could not have reached that "temporal limit" wherever it may be. Baker's reliance on his sentence could not have lasted even two years as he was sentenced on December 4, 1987, and the State moved on August 21, 1989, for leave to cross-appeal from the sentence. Further, he could not have had a clear "expectation of finality" when the State cross-appealed as the direct appeal process had not been concluded by that time. See United States v. DiFrancesco, 449 U.S. 117, 136, 101 S. Ct. 426, 437 (1980) (defendant "has no expectation of finality in his sentence until the appeal is concluded or the time to appeal has expired"); State v. Rodriguez, 478 A.2d 408, 412 (N.J. 1984) ("Since the underlying substantive convictions in this case were themselves the subject of attack on an appeal in which defendant sought their modification, no legitimate expectation offinality could be invested in the underlying convictions or the sentences related to them.").

We realize that prisoners place enormous weight upon their hopes for parole or release. But Baker has not shown a substantial enough expectation of release to support a finding of a violation of his due process rights. While Baker relies heavily on DeWitt v. Venetoulo that case is distinguishable as there, after a defendant was paroled, the court reimposed a sentence to correct an illegal order suspending a portion of his sentence.

It is also significant that Baker initiated the appellate process and was seeking a new trial by appealing. Thus, as the Appellate Division indicated on Baker's second appeal, his "own appeal prevented his convictions and sentences from being invested with finality." State v. Baker, 636 A.2d at 564. Therefore, it is conceivable that if he had been successful on appeal and then had been convicted at a new trial, the court might have imposed a greater sentence on

15

him than that it originally imposed. Id. While it is true that North Carolina v. Pearce, 395 U.S. 812, 89 S.Ct. 2072 (1969), places some limitations on the enhancement of a sentence after a retrial, the case is not an absolute bar to such an enhancement. Thus, by appealing, Baker gambled that he would lose the advantage of the 27-year sentence with an 11-year period of parole ineligibility. He lost his gamble, though not in a way he could have anticipated when he appealed.

We ultimately are persuaded by the State's argument that it is proper that Baker serve at least the minimum sentence the Legislature intended for the crimes he committed. One month before Baker kidnaped and sexually assaulted the minor girl, the Legislature directed that any person who commits such an offense should serve at least a 25-year term of imprisonment without parole. We would thwart this legislative directive if we were to conclude that due process considerations require that Baker be allowed to avoid the statutorily required minimum sentence because the trial court failed to impose the mandated period of parole ineligibility, and the State failed to appeal the sentence for more than a year-and-a-half.

The State had the right to pursue an appeal of the illegal sentence, and Baker now is serving the sentence mandated for the crimes he has committed. The only possible relief that Baker could obtain from either this court or the district court on remand after further proceedings is that he be released unless the state court resentences him to an illegal sentence. See Orban v. Vaughn, 123 F.3d 727, 731 n.1 (3d Cir. 1997). Surely, only the most compelling circumstances could justify a federal court to grant the extraordinary relief of requiring a state court to impose an illegal sentence as a condition of holding a prisoner in custody. Those circumstances are not present here.

IV. CONCLUSION

We close with the following overview of this case. Baker was constitutionally convicted and sentenced to the minimum term for his offenses. In these circumstances, it is quite remarkable that he petitions for a writ of habeas

16

corpus so that he can obtain an illegal result. We will not grant him such relief.

For the foregoing reasons we will affirm the order of September 24, 1997.

17

POLLAK, District Judge, dissenting:

I.

As the court's opinion makes plain, one who, pursuant to Strickland v. Washington, 466 U.S. 668 (1984), mounts a challenge to a conviction and/or sentence on the ground of asserted ineffective assistance of counsel, must, in order to prevail, show that (1) "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment," id. at 687, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

I agree with the court's persuasive demonstration that Baker's "trial attorney's error with respect to his ignorance of the sentencing law has satisfied the first prong of the Strickland test." However, given the procedural posture of this habeas corpus proceeding--in which we, as an appellate panel, are reviewing a district court denial of the writ based on pleadings and legal argument, no evidentiary record having been made in the district court--I do not feel that I can with entire confidence subscribe to the court's conclusion that Baker "has not met the second Strickland prong--a showing that there is a `reasonable probability that, but for' the error, there might have been a different result." The court's opinion argues with considerable force the proposition that, even if Baker's trial attorney had in 1987 been properly informed about the 1986 amendment of the statute governing sentence and had communicated that information to Baker, his client, the sentence ultimately imposed on Baker would not have been less severe than the sentence he now challenges. Very possibly so. But the court's argument, while long on advocacy, is somewhat short on factual infrastructure--and this is unsurprising, given that (1) no evidentiary record was made in the district court and (2) it does not appear that any of the several proceedings in the state courts focused systematically in some factually comprehensive fashion on the sentencing aspect of Baker's ineffective-assistance-of-counsel claim. Accordingly, the appropriate course for this court to pursue

18

is, so it seems to me, the conventional course of remand for development of the facts.

The court eschews this course. The court states that "we will not remand so that the district court can preside over a charade in which witnesses testify about hypothetical conduct." But characterizing the proposed district court inquiry as one which would address "hypothetical conduct" does not mean that no inquiry is called for. Any inquiry into whether an acknowledged error--in this instance, the ineffectiveness of counsel--was harmless or not necessarily calls for an assessment of the likelihood that a road not taken might have brought the traveler to a destination other the than one actually arrived at. Characterizing such an inquiry as "hypothetical" may signify that it could be instructively pursued in a law school classroom, but it does not serve to remove it from the courtroom. And so, persuaded that this habeas corpus case should be remanded for further proceedings, I respectfully dissent.1

II.

If this case were to be remanded for further proceedings in the district court, I would think it proper that such further proceedings also encompass some inquiry into a facet of the ineffective-assistance-of-counsel issue which has not been addressed by the parties in briefing and arguing this appeal. I have in mind the question whether Baker was adequately advised by counsel who represented Baker in 1988, when, rather tardily, he undertook tofile an appeal from his 1987 conviction. So far as I can determine from the materials available to us on appeal, it appears likely that appellate counsel, at the time Baker's appeal was perfected, was, like trial counsel a year before, unaware of the 1986 amendment of the sentencing statute. If that is the case, we have a second instance of ineffective-

_____

1. Notwithstanding my disagreement with the court on this Strickland issue, I would note that I entirely agree with the court -- for the reasons
given in the court's opinion -- that the action of the New Jersey courts in extending Baker's unauthorized sentence to a term in conformity with the strictures of the 1986 amendment of the sentencing statute did not work a denial of Baker's substantive due process rights.

assistance-of-counsel--one that would appear to be even more egregious than the first, since an additional year had gone by since the Legislature changed the governing law. And this putative second instance of ineffective-assistance-of-counsel may very well have been the factor which propelled Baker, through appellate counsel, to pursue what proved to be the calamitous course of filing an appeal-- "calamitous" in that Baker's appeal set the stage for the state's cross-appeal, leading to the longer sentence which Baker has challenged in this habeas corpus proceeding. Properly advised of the dramatically enhanced parole ineligibility he might face were he to succeed on appeal and thereby gain a new trial, and, potentially, a second conviction, Baker might well have foregone filing the 1988 direct appeal of his 1987 conviction. On the other hand it is indeed possible that, even if Baker had been properly advised of the large risk an appeal entailed, he would nonetheless have directed counsel to appeal. Which would have been the more likely scenario we cannot tell. But in order fully to assess whether Baker has a valid Strickland claim with respect to his appeal, inquiry is called for. And that inquiry would be the province of the district court, unless that court were to determine that the question of ineffective assistance of appellate counsel is unexhausted and hence not open to current scrutiny on Baker's present application for habeas corpus.

Conclusion

For the reasons given in Part I of this opinion, I dissent from the judgment of the court. Were this case remanded to the district court for the further proceedings contemplated in Part I, those further proceedings should, in my judgment, also entail inquiry into the issue identified in Part II.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit