

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-27-1998

# Meyers v. Gillis

Precedential or Non-Precedential:

Docket 97-1750

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Meyers v. Gillis" (1998). *1998 Decisions.* Paper 92.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/92

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 27, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-1750

PHILIP MEYERS

v.

FRANK D. GILLIS, SUPERINTENDENT, et al.;
THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA; THE DISTRICT ATTORNEY OF
BUCKS COUNTY

       Frank D. Gillis, Superintendent,
       The Attorney General of the State of Pennsylvania
       and District Attorney of Bucks County,

       Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
Civil Action No. 94-CV-7160

Argued: March 27, 1998

Before: MANSMANN, ROTH and McKEE, Circuit Judges

(Opinion Filed: April 27, 1998)

       Troy E. Leitzel
       Heather A. Castellino
       Stephen B. Harris (Argued)
       Alan M. Rubenstein
       Office of District Attorney
       55 East Court Street
       Bucks County Courthouse
       Doylestown, PA 18901

       Attorneys for Appellant

         Christopher D. Warren (Argued)
         DeStafano & Warren, P.C.
         The Lafayette Building
         Suite 1006
         437 Chestnut Street
         Philadelphia, PA 19106

         Thomas A. Bello
         The Curtis Center
         Suite 1150
         Independence Square West
         7th and Walnut Streets
         Philadelphia, PA 19106

         Attorneys for Appellee

OPINION OF THE COURT

McKEE, Circuit Judge.

We are asked to decide if the district erred in granting
Philip Meyers' petition for a writ of habeas corpus under 28
U.S.C. S 2254. The district court concluded that Meyers'
trial attorneys rendered ineffective assistance when they
gave Meyers incorrect advice as to his parole eligibility; that
Meyers relied on that advice to his prejudice; and he was
therefore entitled to habeas relief. For the reasons that
follow, we will affirm.

I. BACKGROUND

On July 13, 1981, Philip Meyers killed Hugh Daily by
striking him several times with a baseball bat. Meyers was
subsequently charged with criminal homicide (first and
second degree murder) and robbery. The robbery charge
was dismissed following a preliminary hearing. Meyers was
represented by two attorneys from the Bucks County Public
Defender's Office. On October 21, 1981, following
discussions with defense counsel, the Commonwealth
withdrew the first degree murder charge and Meyers
entered a plea of guilty to second degree murder in the
Pennsylvania Court of Common Pleas. At that time,

2

Pennsylvania imposed a mandatory sentence of life imprisonment without the possibility of parole for a conviction of second degree murder. Therefore, a defendant convicted of second degree murder could only be paroled if the governor, upon recommendation of the Board of Pardons, first commuted the life sentence to a term of imprisonment for a period of years. See Pa. CONST. art. 4, S 9. Dick Thornburgh was governor at the time of Meyers' plea, and he had a history of not commuting life sentences. After a sentencing hearing on November 9, 1981, Meyers was sentenced to the required period of life imprisonment.

On November 30, 1981, Meyers filed a motion to withdraw his plea nunc pro tunc and for appointment of new counsel. However, the sentencing court did not act on that motion for nearly seven years, and Meyers eventually filed a pro se petition under the Pennsylvania Post Conviction Hearing Act, 42 Pa. Con. Stat. Ann. S 9541 et seq. ("PCHA"). The PCHA petition challenged the effectiveness of Meyers' trial counsel and the validity of his guilty plea.

The Court of Common Pleas conducted evidentiary hearings on the PCHA petition on May 26, 1989, and December 19, 1989. At the hearings, Meyers testified that his trial counsel had advised him that if he pled guilty to second degree murder he would get life imprisonment but would be "eligible for parole in seven years." App. at 32. He also testified that he had no idea that the plea subjected him to a mandatory life sentence without parole eligibility. Id. at 40. Meyers' testimony was corroborated by one of his trial attorneys. She testified:

> I think [Meyers] clearly misunderstood discussions that we had concerning the amount of time that he was going to do. We did have discussions with him concerning the amount of time that we expected that he would do. And quite frankly we based that on our knowledge, at the time, of the amount of years that people were serving in a state institution on homicide cases, be they first degree or second degree prior to the time. The sentences were being commuted at that time by the Governor at the time. That's why I remember the statistics showed that people who were

3

> incarcerated on second degree murder were being
> paroled several years prior to the time or sentences
> being commuted.

Id. at 47.

On August 8, 1991, the Court of Common Pleas dismissed Meyers' petition for post-conviction relief. The state court ruled that Meyers' plea was valid. The judge found Meyers' testimony "not to be credible, to the extent that he indicated that he was not fully and completely advised of the requisite constitutional and statutory rights in his 1981 guilty plea colloquy." App. at 105. The court also found that Meyers received effective assistance of counsel because "the advice counsel gave defendant regarding real time he would be incarcerated was accurate at the time it was given." Id. at 111. Accordingly, the court did not make specific findings concerning whether Meyers would have pled guilty had his trial attorneys specifically informed him that his plea required that he be sentenced to life in prison without parole. On October 29, 1993, the Superior Court of Pennsylvania affirmed, and the Pennsylvania Supreme Court subsequently denied allocatur.

On November 28, 1994, Meyers filed a petition for a writ of habeas corpus under 28 U.S.C. S 2254 in federal district court. He raised the same basic claims he had presented at the PCHA hearings in state court. The district court held an evidentiary hearing on July 17, 1994. During that hearing, Meyers testified that his trial attorneys had advised him that they had reviewed a report which showed that Milton Shapp (who had been governor of Pennsylvania prior to Dick Thornburgh) had commuted the sentences of people convicted of second degree murder. App. at 134. However, Shapp was not governor when counsel was advising Meyers on how to proceed. Meyers further testified that he did not recall his attorneys ever using the term "commutation" during their discussions. Id. at 136. He stated "if I had known I was never eligible for parole, I would not have plead [sic] guilty." Id. at 146.

By order dated September 6, 1995, the district court granted habeas relief. However, the court did not rely upon

Meyers' claim of ineffective assistance of trial counsel. Rather, the court sustained Meyers' attack on the guilty plea colloquy. The court ruled that the colloquy was invalid under Pennsylvania law because the factual basis for the plea was not established until after the plea had been accepted. The Commonwealth appealed from that order, and we reversed. Meyers v. Gillis, 93 F.3d 1147 (3d Cir. 1996). We held that the record fairly supported the state court's finding that a factual basis had been established prior to entry of the guilty plea. Id. at 1150. Moreover, we noted that establishing a factual basis for a guilty plea is not a condition precedent to acceptance of the plea, and the initial failure to establish the factual basis did not amount to a due process violation. Id. at 1151. Since the district court had not addressed Meyers' claim of ineffective assistance of counsel, we remanded the case so the court could address that issue.

On remand, the district court again granted Meyers' petition for a writ of habeas corpus. This time, the court focused on the claim of ineffective assistance of counsel. The court found that Meyers had been told that he would be eligible for parole despite pleading guilty to second degree murder, that the advice was grossly misleading, and but for this misleading advice, there was a reasonable probability that Meyers would have pled not guilty and gone to trial. D. Ct. Op. at 46. Accordingly, the court held that Meyers was entitled to relief under Strickland[1] and its progeny. This appeal followed.

II. DISCUSSION

A criminal defendant is entitled to reasonably effective assistance of counsel. See U.S. CONST. amend. VI. However, a defendant is only entitled to habeas relief for a violation of that right if he or she establishes ineffectiveness as well as resultant prejudice. Strickland, 466 U.S. at 687. This applies to representation during the plea process as well as representation during a trial. Hill v. Lockhart, 474 U.S. 52, 58 (1985); see also, Bivens v. Groose, 28 F.3d 62, 63 (8th Cir. 1994). Furthermore, several other courts have

_____

1. Strickland v. Washington, 466 U.S. 668, 687 (1984).

held that a defendant may be entitled to habeas relief if counsel provides parole eligibility information that proves to be grossly erroneous and defendant can show that he would not have plead guilty in the absence of the erroneous information. See, e.g., Sparks v. Sowders, 852 F.2d 882, 885 (6th Cir. 1988); Czere v. Butler, 833 F.2d 59, 63 n. 6 (5th Cir. 1987): O'Tuel v. Osborne, 706 F.2d 498, 500-01 (4th Cir. 1983); Cepulonis v. Ponte, 699 F.2d 573, 577 (1st Cir. 1983); Strader v. Garrison, 611 F.2d 61, 65 (4th Cir. 1979).

A. Deficient Performance

Meyers' representation will not be deemed ineffective unless it "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. Here, the state court found that the advice given to Meyers was accurate and concluded that trial counsels' representation was therefore not deficient. App. at 111.2 The district court disagreed and concluded that trial counsels' advice was "grossly misleading." Under 28 U.S.C. S 2254, a federal court ordinarily must presume that state court findings of fact are correct. See Jackson v. Byrd, 105 F.3d 145, 147 (3d Cir. 1997). However, this presumption of correctness does not apply if the state court's findings are not fairly supported by the record. Pemberthy v. Beyer, 19 F.3d 857, 864 (3d Cir. 1994). The district court found that the record did not support the state court's conclusion that the "advice counsel gave defendant regarding the possible real time he would be incarcerated was accurate at the time it was given." D. Ct. Op. at 40. We agree. The state court's finding is clearly inconsistent with this record.

The record is replete with instances where Meyers was informed that he would become eligible for parole sometime in the future despite pleading guilty to a crime that carried a mandatory period of life imprisonment as the only

_____

2. We noted in our first Meyers opinion that a defendant does not have a constitutional right to be provided with parole eligibility information prior to entering a plea. Meyers v. Gillis, 93 F.3d at 1153 (citations omitted). However, we also noted that any information that is provided by defense counsel must be accurate. Id.

authorized sentence. Such statements were even made during the sentencing hearing in the presence of the judge and prosecutor, and neither made any effort to clarify Meyers' ineligibility for parole. At sentencing, the lead defense counsel told the court of individuals who would write to the Parole Board on Meyers' behalf and vocational opportunities which might exist for him "when he gets back on the street," as the trial court and prosecutor listened in silence. App. at 12-13 (emphasis added). Apparently, defense counsel mistakenly believed that their client would be eligible for parole.

Co-counsel also used the term "parole" and implied that Meyers could serve less than life in prison when she later testified at the PCHA hearing and explained why she felt pleading to second degree murder was appropriate

> I believe at the time, taking all factors into consideration that it was the best resolution. And was probably at some point going to result in Mr. Meyers being paroled in a shorter period of time then he would have been had he been found guilty of first degree and received the death penalty . . . .

App. at 55-56. She further acknowledged that Meyers misunderstood their discussions concerning parole eligibility. App. at 47.

Even the Assistant District Attorney who prosecuted the matter was confused by trial counsels' insistence on a plea to second degree, as opposed to first degree, murder. He testified before the district court in opposition to Meyers' habeas petition that he did not understand defense counsels' position because first and second degree murder both carried a mandatory sentence of life imprisonment without parole. The prosecutor described his conversation with the public defenders as follows:

> I wanted a plea to first degree murder and did not understand the distinction they were drawing between first and second degree murder. They both carried life sentences.
>
> Our initial offer is we would not seek the death penalty, agreed to a life sentence if he plead guilty tofirst

7

degree murder. [Counsel] was insisting on second
degree murder. I do not see the distinction.

They mentioned regarding commutation of sentences or
the possibility of Mr. Meyers being released at some
point in the future and that would increase with the
second degree plea.

App. at 151-52. Despite this casual reference to
"commutation," it is clear that the procedural prerequisite
of "commutation" was never explained to Meyers, and that
Meyers did not realize he was, in all reality, pleading guilty
to an offense that did not allow him to receive parole in the
future.

Moreover, even if defense counsel had explained that
Meyers' parole eligibility was contingent upon having his
life sentence commuted, defense counsels' reliance on an
ambiguous report regarding parole eligibility would still
have hopelessly confused the situation. That report appears
to have tracked the number of individuals convicted of
second degree murder who were paroled or who received
commutations under Governor Shapp. The report is
misleading at best. As noted above, Shapp was not the
governor in 1981 when Meyers entered his guilty plea, and
there was no way to predict whether then Governor
Thornburgh would commute life sentences. Moreover, this
report may have included individuals convicted of second
degree murder before 1974 when second degree murder
was punishable by imprisonment for a term of years and
parole was possible.[3]

_____

3. Prior to 1974, the Pennsylvania Crimes Code only contained murder
in the first degree and murder in the second degree. First degree murder
included not only premeditated, intentional killing, but the concept of
"felony-murder" as well. Second degree murder included all murders
other than first degree murder. 18 Pa.C.S.A. S 2502 (Historical Note). The
General Assembly amended the Crimes Code in 1974 and redefined
second degree murder. Under the new Code that was in effect when
Meyers pled guilty, second degree murder was limited to the codification
of the "felony-murder rule." One commits second degree murder under
the revised Crimes Code when a death occurs "while defendant was
engaged as a principal or an accomplice in the perpetration of a felony,"
18 Pa.C.S. S 2502(b).

In any event, we are satisfied that the state court's finding regarding the accuracy of the advice Meyers received is not supported by this record. On the other hand, the contrary finding of the district court is consistent with this record, and we therefore conclude that the district court did not err in ruling that defense counsels' stewardship fell below that required by the Sixth Amendment. Accordingly, we turn to the second prong of our Strickland analysis.

B. Prejudice

The Commonwealth argues that, even if Meyers has established counsels' ineffectiveness, he cannot demonstrate prejudice because he has not shown that he would not have pled guilty but for the advice. The Commonwealth also argues that Meyers' plea spared him from a possible conviction for first degree murder that could have resulted in his execution.

To succeed in showing prejudice, Meyers must show that it is reasonably probable that, but for the erroneous advice of his trial counsel, he would have pled not guilty and gone to trial. James v. Cain, 56 F.3d 662 (5th Cir. 1995)(citing Czere v. Butler, 833 F.2d 59, 63 (5th Cir. 1987)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992)(quoting Strickland, 466 U.S. at 694). It is difficult for any court to determine in hindsight whether a criminal defendant would have pled guilty had he received competent advice from counsel. However, that difficulty cannot restrict our analysis nor cause us to deny relief that is otherwise appropriate and required under the law. See Hill, 474 U.S. at 60. Our task is further complicated by a delay of over sixteen years since the entry of the plea.[4] However, given the totality of the circumstances, we conclude that Meyers has met his burden of showing that there is a reasonable probability that, but for counsels' erroneous advice, he would not have pled guilty, and that he has been prejudiced by doing so.

_____

4. We note, however, that the petitioner is not responsible for this delay.

9

As noted above, Meyers testified before the district court that he would not have pled guilty had he known he would not be eligible for parole. Meyers testified that "[i]f I had known I was never eligible for parole, I would not have plead [sic] guilty." App. at 146. The district court found that testimony to be credible, and we will not set aside that court's fact findings unless they are clearly erroneous. Monachelli v. Warden, SCI Graterford, 884 F.2d 749, 750 (3d Cir. 1989). Meyers' testimony in state court is consistent with the federal court testimony.5 App. at 32, 40 & 101.

Moreover, the record contains other evidence that is consistent with Meyers' arguably self serving testimony. Meyers consistently asserted that the murder was not premeditated but a response to the victim grabbing him. App. at 31. During his confession on July 15, 1981, he stated that

> The [victim] picked me up hitch-hiking. . . . We went to to [sic] the bar, had a few drinks. He dropped me off back at my tent. When I went back to my tent he followed me back there and, I don't know how to phrase it, you could say he assaulted me. He -- I don't know how you want to say it, but he came up to me from behind and startled me, for sure, and tried to molest me. And I grabbed the baseball bat and hit him.

App. at 205-06. We, of course, have no way of knowing if a fact finder would have accepted this testimony. However, this assertion is relevant to the Commonwealth's insistence that Meyer was not prejudiced because he avoided exposure to the death penalty. Based on this account, it is certainly a realistic possibility that defense counsel could have raised a reasonable doubt as to Meyers' specific intent to kill and thereby avoided a conviction for first degree murder. See 18 Pa.C.S. S 2502(a). As a result, Meyers' offense could have been reduced to third degree murder, 18 Pa.C.S. S 2502(c), with a maximum penalty of not more than 20 years imprisonment. 18 Pa.C.S. S 1103(1)(1983). Furthermore,

_____

5. Because the state court ruled that Meyers did not satisfy the first Strickland prong, the court did not make a credibility determination as to this testimony.

10

there is evidence that Meyers, who had a long history of substance abuse, was under the influence of alcohol and/or drugs at the time of the murder. Under Pennsylvania law, evidence of "diminished capacity" could also reduce Meyers' crime to third degree murder. See Commonwealth v. Hathaway, 347 Pa. Super. 134, 146, 500 A.2d 443, 449 (Pa. Super. 1985) ("The diminished capacity defense assumes the defendant is sane but lacks the ability to form a specific intent to kill, and thus reduces the charge of first degree murder to third degree murder.").

The evidence that Meyers killed the victim only after being assaulted by him also introduces an element of self defense and such mitigation as could have reduced the killing to voluntary manslaughter, a second degree felony. 18 Pa.C.S. S 2503. Under Pennsylvania law, a person commits voluntary manslaughter if at the time of the killing "he believes the circumstances to be such, that, if they existed, would justify the killing . . . , but his belief is unreasonable," 18 Pa.C.S. S 2503(b), or "he is acting under a sudden and intense passion resulting from serious provocation . . . ." 18 Pa.C.S. S 2503(a). The maximum sentence Meyers could have received for a conviction for voluntary manslaughter was 10 years imprisonment. 18 Pa.C.S. S 1103(2)(1983). Meyers was also only eighteen years old at the time of the offense, and he did not have a history of violent crime. Thus, Meyers' exposure to the death penalty is less than a certainty.

In contrast, the Commonwealth argues that part of its case against Meyers included a statement by a friend of Meyers who stated that Meyers told him he intended to rob the victim. Accordingly, the Commonwealth claims that this was a case where the felony-murder rule appropriately applied. Thus, argues the Commonwealth, Meyers was realistically facing no less than second degree murder anyway and was, therefore, not prejudiced by his plea. 18 Pa.C.S. S 2502(b). However, the charge of robbery did not survive the preliminary hearing. We cannot determine if Meyers' friend would have testified for the Commonwealth or whether his testimony was credible. At oral argument, defense counsel asserted, without contradiction, that this witness has never testified under oath nor been found

11

credible by a fact finder. Therefore, that testimony is not part of the record in this appeal, and we cannot go beyond the record to refute Meyers' assertion of prejudice.

In addition, this record does not establish that Meyers was motivated to plead guilty to avoid exposure to the death penalty. One of his trial attorneys did testify that she was concerned about that exposure, app. at 55 & 172, but Meyers testified that he was concerned with the impact of a trial on his family, and he was influenced by the likelihood of parole in the future. Id. at 146. Although the impact of a trial on his family supports the Commonwealth's theory that Meyers would have plead guilty anyway, the totality of Meyers' testimony undermines that position and leads us to affirm the contraryfinding of the district court. Cf. Czere, 883 F.2d at 64 (finding petitioner was not prejudiced by improper advice from counsel as to parole eligibility because petitioner's paramount concern was to avoid the death penalty, not parole).

III. CONCLUSION

Thus, for the reasons set forth above, we conclude that Meyers was prejudiced by the erroneous advice his trial counsel gave him. Accordingly, we will affirm the judgment of the district court.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

12