

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-6-2002

# Scarbrough v. Johnson

Precedential or Non-Precedential: Precedential

Docket No. 01-3665

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Scarbrough v. Johnson" (2002). *2002 Decisions.* Paper 478.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/478

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed August 6, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3665

MICHAEL SCARBROUGH

v.

PHILIP JOHNSON,
        Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 01-cv-01014)
District Judge: Honorable Donald J. Lee

Argued April 30, 2002

Before: NYGAARD, ROTH, and WEIS, Circuit Judges

Filed: August 6, 2002

        Paul M. Petro, Esquire (ARGUED)
        John C. Pettit, Esquire
        Office of the District Attorney
        1 South Main Street
        Washington, Pennsylvania 15301

        Counsel for Appellant


        Salvatore C. Adamo, Esquire
         (ARGUED)
        Two Penn Center Plaza
        Suite 200
        Philadelphia, Pennsylvania
         19102-1706

        Counsel for Appellee

OPINION OF THE COURT

WEIS, Circuit Judge.

Petitioner Michael Scarbrough pleaded guilty to second degree murder in the Court of Common Pleas of Washington County, Pennsylvania in 1995 and was sentenced to life imprisonment. In obtaining a writ of habeas corpus he alleged ineffective assistance of counsel, contending that his attorney's advice as to future parole eligibility was inaccurate and, consequently, his guilty plea was invalid. We conclude that Scarbrough was correctly informed about the possibility of parole under Pennsylvania law during the state court proceedings. Accordingly, he was

not misled and his plea was voluntary. We will, therefore, reverse the grant of habeas corpus by the District Court.

In October 1994, petitioner Scarbrough and two accomplices forcibly entered a home in Washington, Pennsylvania. Scarbrough shot and killed one person and the trio took jewelry from another. All three were charged with criminal homicide, conspiracy, robbery and burglary. The district attorney sought a first degree murder conviction and the death penalty for all defendants.

As the trial was about to begin, Scarbrough's two co-defendants decided to plead guilty and agreed to testify against him. The trial judge then conducted a hearing with Scarbrough, his counsel and the District Attorney. The judge's intention was to be sure that Scarbrough "understands what the plea offers [made to him] are so there is no mistake." Accordingly, the judge reviewed the homicide charges and explained in detail the various penalties. He informed Scarbrough that the penalty for first

degree murder was "either a life sentence or a death sentence." As for second degree murder, "the Court has no discretion, it's an automatic life sentence."

Defense counsel added that the Commonwealth's most recent plea offer, made that morning, involved a"plea to Second Degree Murder, [the] penalty would be life imprisonment with a possibility of parole" and, if the prosecution requested, Scarbrough would testify against any remaining co-defendants and others. The sentences for the robbery, burglary and conspiracy charges would run concurrently. In other words, defense counsel concluded, "[t]here would not be any additional time. It would be a life sentence. . . . [N]othing . . . would interfere with his ability to have a sentence commuted and eventually be paroled . . . ."

The trial judge reminded Scarbrough that "there is no guarantee for -- we do not handle paroles or anything of that nature, neither [does] the Court, nor the District Attorney. That falls within the Department of Probation and Parole and the governor as to whether or not they would parole you." The judge continued, "Now, years ago a life sentence meant you served maybe 17, 18 years and they would consider you maybe up for parole. Things have changed now. Honestly I can't tell you what would happen."

The judge reiterated that second degree murder called for a life sentence, although "[m]aybe they would or wouldn't consider something less than full life." He warned, however, that if Scarbrough were also convicted of burglary, robbery or conspiracy, "I'm sure there would be no possibility of parole. I can't guarantee you anything."

After the lengthy discussion, Scarbrough decided to reject the Commonwealth's offer. Later that afternoon, however,

he changed his mind and accepted the plea bargain. During the plea colloquy in open court that followed, the district attorney said that "Second Degree Murder carries with it a life sentence with the possibility of parole." He recommended concurrent sentences for the other offenses so that "in the event there is at some point in time an opportunity for him to be considered for parole, these other charges would not in any way interfere."

3

The judge stated on at least three occasions during the colloquy that second degree murder carried a life sentence. Toward the conclusion of the proceeding, the court again emphasized that there was "no guarantee[ ] here on parole or anything like that. We have no jurisdiction over that." At each of these junctures, Scarbrough was asked whether he understood the implications of his plea, and each time the response was that he did.

When the Court pronounced sentence "for the remainder of his natural life," Scarbrough turned to his attorney and asked if he would never be eligible for parole. The judge replied,

> "As I explained to him, that's up to the Department of Probation and Parole. [The district attorney] here said he was going to leave something in the notes here, he's not against the possibility of parole, and he would not thwart that in any way when that comes up, and he will leave a record here to so indicate."

> . . . "I can't make any promises for the Parole Board."

Scarbrough said that that "explained it" and the Court then entered judgment.

One year later, Scarbrough filed for state post-conviction relief, asserting that his counsel had incorrectly advised him about parole eligibility. Both Scarbrough and his trial counsel testified at the hearing. The same judge who had conducted the plea colloquy presided over the post-conviction proceedings. At its conclusion he held,"this court has no reservation based upon the evidence and testimony in concluding that the primary and only motivating factor in petitioner's acceptance of the plea agreement was to escape the real possibility of a first degree murder conviction and death penalty."

The judge also noted that unlike the defendant in Meyers v. Gillis, 142 F.3d 664 (3d Cir. 1998), Scarbrough did not and could not have alleged that he had acted in self defense. There were simply no mitigating circumstances in the case at hand, where only Scarbrough and his confederates had guns. Based on the evidence submitted, the Court of Common Pleas denied post-conviction relief,

4

finding "the plea . . . neither unlawfully induced nor . . . a product of ineffective counsel."

Scarbrough then appealed to the Superior Court of Pennsylvania, which agreed with Meyers v. Gillis that although defendants do not have a constitutional right to parole information, any such disclosure given must be accurate. In Meyers, the Court observed, counsel had told the defendant he would be eligible for parole in seven years.

The Superior Court acknowledged that Scarbrough's plea agreement included "life imprisonment with the possibility of parole." The court emphasized that unlike Meyers, however, Scarbrough had not been given any assurances, estimates or statistics as to the likelihood or timing of parole. The court continued that although parole might be unusual in these circumstances, it was not prohibited, and there was no requirement that Scarbrough be advised of the odds that such action might occur. Accordingly, the Superior Court concluded that Scarbrough's guilty plea was valid and, therefore, defense counsel could not be found to have been ineffective. The state supreme court denied review.

Scarbrough next filed pro se for a writ of habeas corpus in the United States District Court for the Western District of Pennsylvania.1 Without holding an evidentiary hearing, the magistrate judge issued a report and recommendation, concluding that trial counsel, the district attorney and the state court had each "assured the petitioner that he would be eligible for parole at the discretion of the Pennsylvania Board of Probation and Parole when in fact, no such eligibility could reasonably exist, barring a gubernatorial commutation . . . . [B]ut for these assurances[Scarbrough] would probably not have pled guilty." Accordingly, the report concluded, the plea had not been entered with the effective assistance of counsel and the writ should issue. The district judge adopted the report and recommendation without comment.

The District Court's jurisdiction was based on 28 U.S.C.

_____

1. We appointed counsel to represent Scarbrough on appeal and extend the thanks of the Court to Mr. Adamo for his able presentation.

5

S 2254. We have jurisdiction over the final order of the District Court pursuant to 28 U.S.C. S 1291. On appeal from a grant of habeas corpus, this Court exercises plenary review of the District Court's legal conclusions. Orban v. Vaughn, 123 F.3d 727, 729 (3d Cir. 1997). When the District Court does not hold an evidentiary hearing and engage in independent fact-finding, but rather limits the habeas evidence to that found in the state court record, our review is plenary. Yohn v. Love, 76 F.3d 508, 515 (3d Cir. 1996). Additionally, a federal court must presume that

state court findings of fact are correct, unless they are not fairly supported by the record. Meyers, 142 F.3d at 667.

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), effective April 1996, amended the standards for reviewing state court judgments in federal habeas corpus petitions. Under the AEDPA, a petitioner must establish that the state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

22 U.S.C. S 2254(d); see also Bell v. Cone , ___ U.S. ___, No. 01-400, slip op. (May 28, 2002); Williams v. Taylor, 529 U.S. 362, 402-03 (2000) (discussing AEDPA); Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000).

In this case, Scarbrough claims that because his trial counsel gave him inaccurate information as to the possibility of parole, he pleaded guilty to second degree murder rather than going to trial, as he would have otherwise done. The case thus turns on whether the state courts' decisions were contrary to clearly established federal law as to claims of ineffective assistance of counsel.

As the Supreme Court explained in Strickland v. Washington, 466 U.S. 668 (1984), petitioners alleging ineffective assistance of counsel must establish two

6

elements. First, they must demonstrate that counsel's performance was deficient, that is, his errors were so serious that he did not function as that counsel guaranteed by the Sixth Amendment. The second element of an ineffective assistance claim is actual prejudice. Strickland, 466 U.S. at 687. In plea bargain cases, a petitioner satisfies the prejudice requirement by demonstrating a reasonable probability that "but for counsel's erroneous advice, he would not have pleaded guilty and gone to trial." Meyers, 142 F.3d at 668.

We begin by observing that the state courts did not issue a decision that was contrary to federal law under the AEDPA standard. The opinions issued by the Common Pleas and Superior Courts on ineffective assistance of counsel and the voluntariness of Scarbrough's plea were consistent with Strickland. The issue, then, is whether the state courts' decisions were based on an unreasonable determination of the facts and their application to the law.

Scarbrough contends that our decision in Meyers  is

controlling. In that case, however, during the sentencing hearing and in the presence of the prosecutor and the judge, counsel informed defendant that he would be eligible for parole. Neither the district attorney nor the judge challenged that statement, even though defendant was pleading guilty to second degree murder, which, under Pennsylvania law, carried a mandatory life sentence. Meyers' counsel was apparently relying on a study showing the percentage of life sentences in second degree murder cases that had been commuted by a previous governor and resulted in parole. According to Meyers, his counsel mentioned eligibility for parole in seven years. At the time of his sentencing, however, there was no indication that the then incumbent governor would follow such a pattern.

We concluded that Meyers had been given grossly inaccurate advice and a reasonable probability existed that but for the misleading information he would not have pleaded guilty. The defendant had no prior criminal record, and the evidence indicated that he had viable claims of self-defense and diminished capacity. Those factors could have persuaded Meyers to stand trial rather than plead guilty.

We affirmed the district court's conclusion that defense counsel's advice prejudiced his client.

In the case before us, on the other hand, the Pennsylvania Superior Court observed that although the "plea agreement included life imprisonment with the possibility of parole . . . . It similarly is clear that Scarbrough was given no assurances, estimates or statistics regarding the likelihood or timing of a future opportunity for parole." The court emphasized that "[w]hile parole after the entry of a guilty plea to second degree murder may not be a common occurrence, it is not prohibited . . . ." As the court explained, a person may obtain relief if, upon the recommendation of the Board of Pardons, the governor commutes the sentence and the Parole Board then grants parole.

In Pennsylvania, parole thus remains a possibility even when a life sentence has been imposed. In Commonwealth v. Clark, 710 A.2d 31 (Pa. 1998), the Pennsylvania Supreme Court found no error in a trial judge's charge to the jury on the meaning of a life sentence. After explaining that a life sentence generally does not include the possibility of parole, the judge stated,

> "[t]hat's the general proposition. . . . But there are two
> things I want to mention to you in that regard. First,
> the Parole Board [Board of Pardons] at any time can
> recommend to the Governor to commute the life
> sentence. . . . And if the Governor grants the
> commutation . . . then the Parole Board may grant
> parole. So there can be a parole under those
> circumstances. . . . That possibility exists."

Clark, 710 A.2d at 35. See also Commonwealth v. Trivigno, 750 A.2d 243, 256 (Pa. 2000) (a life sentence means that a defendant is not eligible for parole, but the governor has the power to grant a commutation of sentence); Commonwealth v. Robinson, 721 A.2d 344, 355 (Pa. 1998) (instruction that life sentence precludes possibility of parole not necessary); Commonwealth v. King, 721 A.2d 763, 779 (Pa. 1998) (same); Commonwealth v. Rogers, 483 A.2d 990 (Pa. Super. 1984) (defense counsel's advice that parole from life sentence is discretionary with Parole Board does not

8

amount to ineffectiveness). Cf. Carpenter v. Vaughn, ___ F.3d ___, No. 95-9001 (3d Cir. June ___, 2002) (acknowledging possibility of commutation of life sentence and parole under Pennsylvania law).

Scarbrough relies on Castle v. Pennsylvania Board of Probation & Parole, 554 A.2d 625 (Pa. Cmwlth. 1989). There, defendant was serving a life sentence for second degree murder and applied to the Parole Board for consideration of release. The Commonwealth Court concluded that Castle was not eligible for a parole hearing based on its reading of the Pennsylvania statutes governing eligibility, which required a minimum sentence and prohibited the Board from paroling a prisoner serving a life sentence. Castle, 554 A.2d at 628-29. Significantly, the court did not mention the possibility of parole after commutation. Fundamentally, Castle was a procedural decision; it did not articulate, nor did it imply, that Pennsylvania law absolutely precludes parole for prisoners serving mandatory life sentences. Any other reading of Castle would be contrary to holdings of the Pennsylvania Supreme Court. Scarbrough's reliance on that case is, therefore, misguided.

Authoritative case law leaves no room for doubt that a life sentence in Pennsylvania does not mean that a prisoner will be confined for the remainder of his life without any possibility of parole. As the Superior Court explained to Scarbrough, although a release does not often occur, it can take place through the two-stage process of commutation and parole. Accordingly, although the odds may be slim, under Pennsylvania law the possibility of parole from a life sentence does exist.

Here, both the trial judge and the district attorney mentioned commutation to Scarbrough before he entered his plea. Although they did not explain the process at length, we do not consider that brevity to have altered the admonitions given by the trial judge when he repeatedly stated that there was "a possibility" of parole, but he "could not guarantee" anything. At that point in the proceedings, Scarbrough's primary interest was saving himself from exposure to the death penalty. The mechanics of commutation and subsequent parole admittedly make the

9

process more complicated than routine parole proceedings. That, however, does not change the basic fact that ultimately parole was "possible" rather than foreclosed entirely.

We conclude, therefore, that the state courts did not err in holding that under Pennsylvania law, Scarbrough did have a "possibility" of parole. The state trial judge repeatedly stressed that he could not guarantee anything to Scarbrough and that, as times changed, so could the chances for parole. These were absolutely realistic assessments of the situation.

Scarbrough did have a possibility of parole when he was sentenced; he has it today. Although his chances might be remote in today's climate, there is no certainty as to what may happen in the future. As experienced judges, we are familiar with the pendulum of penalogical philosophy, which swings between the alternate regimes of retribution and rehabilitation in moderately regular cycles. Scarbrough's claim that he was misled was, therefore, properly denied by the state courts.

Even if Scarbrough could prevail under the first part of Strickland, he has failed to establish the second requirement, that of actual prejudice. The state trial judge, after the post-conviction relief hearing, made an unequivocal factual finding that the defendant pleaded guilty to avoid the death penalty. A defendant who accepts a plea offer primarily to avoid the death penalty, rather than to secure the possibility of future release, is not prejudiced by improper advice from counsel as to his parole eligibility. Meyers, 142 F.3d at 669-70. At least one other Court of Appeals has come to the same conclusion. Czere v. Butler, 833 F.2d 59, 64 (5th Cir. 1987).

Thus, regardless of whether Scarbrough appreciated fully his chances of being paroled, his overarching concern was saving his life. We find nothing in the record that would justify our setting aside that finding, particularly in view of the deference we accord the factual findings of a state court that has conducted an evidentiary hearing. Such acquiescence is particularly appropriate here, where the judge who presided over the post-conviction relief hearing

10

had also participated in the pre-plea and guilty plea proceedings.

Unlike the defendant in Meyers, Scarbrough here was faced with his co-defendants' testimony that he was the individual who had shot the victim. The trial judge had conducted the guilty plea colloquy of one of the co-defendants and was thus well aware of the strength of the prosecution's case before he conducted Scarbrough's guilty plea proceeding. Moreover, although mitigating

circumstances may have existed in Meyers, the facts of this case provided no similar available defenses.

Scarbrough has failed to demonstrate that the state courts' decisions were based on an unreasonable determination of the facts in light of the evidence presented in that forum. He has not shown that his trial counsel was grossly deficient, nor proved that he would have gone to trial but for the advice of counsel.

Accordingly, the judgment of the District Court will be reversed.

NYGAARD, Circuit Judge, dissenting:

In its decision today, the majority reverses the District Court's grant of habeas corpus to a petitioner who received virtually identical--and equally incorrect--advice from counsel during his plea colloquy as that given by counsel in Meyers v. Gillis--a case in which we affirmed the habeas grant. Because I believe our decision in Meyers v. Gillis, 142 F.3d 664 (3d Cir. 1998), is controlling, and because I am unpersuaded by the majority's attempt to distinguish the two cases, I would affirm the District Court. I therefore respectfully dissent.

At Scarbrough's plea colloquy, at which time he pleaded guilty to second degree murder, defense counsel initially thanked the district attorney for the plea offer and asserted "in the event that Mr. Scarbrough is considered for parole at any time, that they will inform the necessary authorities of his cooperation." (T.T. 68-69). Then, after the judge sentenced Scarbrough to prison "for the remainder of his natural life," Scarbrough expressed alarm and asked his attorney if that meant he would never be eligible for parole. Defense counsel turned to the court, in the presence of the district attorney and Scarbrough, and said "I want to correct him and state that's the terminology used in the statute . . . and while that's the terminology, he is eligible for parole and may be at some time." (T.T. 87) (emphasis added). The judge responded to this incorrect statement of law by simply saying "that's up to the Department of Probation and Parole."

In comparison, in Meyers v. Gillis, we upheld the district court's grant of habeas relief to a petitioner who pleaded guilty to second degree murder after being incorrectly informed by his attorney that he would be eligible for parole in seven years. Id. at 665. We wrote:

> The record is replete with instances where Meyers was informed that he would become eligible for parole sometime in the future despite pleading guilty to a crime that carried a mandatory life sentence . . . Such statements were even made during the sentencing hearing in the presence of the judge and prosecutor, and neither made any effort to clarify Meyers'

ineligibility for parole.

12

Id. at 667. Under these facts, we held that this erroneous advice from counsel "fell below an objective standard of reasonableness," and we thus affirmed the district court's grant of habeas corpus. Id. at 668. I would do the same here.

In its attempt to distinguish this case from Myers, the majority writes that, in Myers, "during the sentencing hearing and in the presence of the prosecutor and the judge, counsel informed defendant that he would be eligible for parole. Neither the district attorney not the judge challenged that statement, even though defendant was pleading guilty to second degree murder, which, under Pennsylvania law, carried a mandatory life sentence." Majority at 7 (emphasis in original).

I see no distinction at all. As every defense attorney and trial judge knows, although the trial is stressful upon the defendant, there is no moment more critical, confusing, and hence stressful, than when a person is losing his or her freedom--in this case--forever. That is why we require nothing less than complete, precise, explanatory colloquies. It is a time when the court and counsel must move slowly and carefully, mindful that they are dealing with a simpler soul, unsophisticated, unlearned in the law, and under great tension. Nonetheless, in just such a milieu, in the presence of the judge and the district attorney, defense counsel clearly stated in response to Scarbrough's concerns, that Scarbrough "is eligible for parole." (T.T. 87). The judge's statement that, "that's up to the Department of Probation and Parole," simply confuses the issue further. Even I am confused by this colloquy, and cannot imagine how the petitioner could know what would lie ahead for him. There is no question in my mind that both Meyers and Scarbrough were denied their constitutional right to effective assistance of counsel during plea negotiations, receiving instead clearly erroneous information regarding the availability of parole, and that this ineffective assistance induced them to plead guilty to a crime they otherwise likely would not have. I see no valid legal grounds upon which to distinguish this case from Meyers.

In conclusion, I believe that the Magistrate's Report, adopted by the District Court, was correct in concluding that:

13

> The record demonstrates that at the time the plea was entered, the petitioner clearly set forth his misgivings about his eligibility for parole and was repeatedly assured by his counsel, the District Attorney and the Court that he would be eligible for parole and that this information was clearly erroneous. For this reason, it

would appear that the petitioner's plea was not knowingly and intelligently entered with the effective assistance of counsel, was entered in contravention of clearly established federal law and that his conviction represents an unreasonable application of federal law.

Magistrates Report, p. 8 (citing Meyers, 142 F.3d at 667).

I would affirm the District Court's grant of Scarbrough's petition for habeas corpus.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

14