

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-23-2005

# Minett v. Hendricks

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3456

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Minett v. Hendricks" (2005). *2005 Decisions*. Paper 973.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/973

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No: 03-3456

_____

JAMES MINETT,

Appellant,

v.

ROY L. HENDRICKS, Administrator
New Jersey State Prison;
ATTORNEY GENERAL OF
NEW JERSEY

_____

On Appeal from the United States District Court
for the District of New Jersey
District Court No. 01-cv-03548
District Judge: The Honorable William H. Walls

_____

Argued January 11, 2005

Before: ROTH and CHERTOFF,* *Circuit Judges*, and SHAPIRO,** *District Judge*.

_____

* This case was submitted to the panel of judges Roth, Chertoff, and Shapiro.** Judge Chertoff resigned after submission, but before the filing of the opinion. The decision is filed by a quorum of the panel. 28 U.S.C. § 46(d).

**Honorable Norma L. Shapiro, Senior District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Jean D. Barrett, Esq. (Argued)
David A. Ruhnke, Esq.
RUHNKE & BARRETT
47 Park Street
Montclair, NJ 07042
          *Counsel for Appellant*

Peter C. Harvey, Esq.
Attorney General of New Jersey
Kristen M. Harberg (Argued)
Deputy Attorney General
Division of Criminal Justice
Appellate Bureau
25 Market Street
P.O. Box 086
Trenton, NJ 08625
          *Counsel for Appellee*

_____

OPINION
_____

SHAPIRO, *District Judge*.

Appellant James Minett ("Minett") appeals from the district court denial of his petition for writ of habeas corpus under 28 U.S.C. § 2254.

## I. FACTS AND PROCEDURAL HISTORY

Minett was convicted in New Jersey state court of murder-for-hire and conspiracy to commit murder. At trial, a witness for the prosecution made an unsolicited statement that Minett had spent time in prison for a gun conviction. The trial judge struck the testimony, gave limiting instructions to the jury, and denied Minett's motions for a mistrial. Minett, appealing his conviction in state court, argued that limiting instructions

2

could not cure the prejudice from the impermissible testimony. Minett's state court appeals failed, and he filed a petition under 28 U.S.C. § 2254 in federal district court. Minett's sole claim is that the trial court violated his right to a fair trial under the Due Process Clause of the Fourteenth Amendment. The district court denied Minett's petition because he failed to exhaust his claim in state court. At issue is whether the district court erred in finding failure to exhaust, and if so, whether Minett's claim has merit.

Minett's conviction arose out of the murder of Holly Jo Desch in New Jersey, on February 11, 1995. Ms. Desch was shot at close range in the back of the head. At the time, Minett was in the hospital. Charles Ward confessed to the shooting and testified that Minett hired him to kill Ms. Desch for $10,000. Ward pleaded guilty to aggravated manslaughter and unlawful possession of a weapon, and was sentenced to 35 years with eligibility for parole in 17½ years.

The prosecutor argued Minett had been having a seven-year affair with Ms. Desch of which Minett's wife was aware. Confrontations between the two women became violent at times. Joseph Leathers, an acquaintance, testified Minett told him about his problems with Ms. Desch and asked him numerous times to find someone to kill her. Ward also testified Minett repeatedly asked him to find someone to kill Ms. Desch. Ward testified that he eventually agreed to commit the murder himself, and that Minett asked him to make the shooting look like an attempted robbery at the laundromat where Ms. Desch worked. According to Ward, Minett supplied him with the gun and bullets. After

the murder, one of Minett's friends warned him the police were looking for him; he fled to Florida, where he lived under a false name until he was arrested in December, 1995.

Minett's defense was that Ward killed Ms. Desch in a robbery attempt, and the police, knowing of Minett's troubles with Desch, suggested the murder-for-hire theory to Ward during their interrogation of him. The police never located the gun. The prosecution presented no physical evidence connecting Minett to the crime. The prosecution's case depended heavily on the testimony of Ward and Leathers. Ward's story contained inconsistencies, including his statements about when he obtained the gun from Minett. Leathers claimed at trial that he was unaware of an application for immunity on his behalf.

During the prosecution's direct examination of Leathers about Minett's troubles with Ms. Desch, Leathers made an inadmissible statement that Minett had served time for a firearms conviction:

> **Q**: Did he ever talk to you about the kind of relationship that he had?
>
> **A**: Well, she created problems for him.
>
> **Q**: Did he tell you about any more problems, besides of course the motorcycle accident?
>
> **A**: Well, I know he had -- I know from experience that he went to – he had, he served time for a gun.

Supp. App. at 2,055. The trial judge immediately stated, "That comment is totally struck. Jury is to disregard same totally. Next." *Id.*

4

Minett's counsel told the judge he intended to move for a mistrial. The judge gave a limiting instruction to the jury:

> We have heard from Mr. Leathers certain testimony that the defendant may have had some contact with criminal system [sic] before this case. Even if true, that is not competent evidence in this room about this case. The issue before you is the conducted [sic] of this gentleman on these facts before you in this room. Nothing else.
>
> That issue was, that statement by this gentleman was struck by me. Now, to be struck from the record means the following: No one expects you to erase it from your memory. But you must remember not to use the struck piece of evidence to decide the case in any way. Anything less would mean you would not be doing your job pursuant to your oath.

*Id.* at 2,097.

Minett did not object to the instruction, and the cross-examination resumed. In moving later for a mistrial, he argued jurors would be unable to ignore the inadmissible statement, to his irreparable prejudice. The prosecutor responded that she did not intentionally elicit the statement from Leathers, but tried to stop him from making it; she claimed a limiting instruction with voir dire would be sufficient.

The judge denied the motion for a mistrial because the jurors appeared to acknowledge and understand his limiting instruction:

> These people have been with us for about two weeks. They have been very attentive, and personally, I upon telling them the second time they could not use a piece of information, they were looking at me like they understood what was going on here in terms of that position.

*Id.* at 2,211. The defense, fearing it would highlight the statement and prejudice Minett further, declined to request a voir dire. Instead, Minett asked the judge for a "very, very

5

strong general instruction about the significance of striking testimony." *Id*. at 2,221. The judge found Leathers's statement was not intentionally elicited by the prosecutor, but was the result of Leathers's "lack of smarts." He again stated the jury seemed responsive to his instructions:

> [T]hey understood me quite clearly on both occasions. They have had good eye contact with me the entire time. They had good eye contact yesterday. No question about that in my mind.

*Id.* at 2,222.

> In charging the jury, the judge issued another limiting instruction:

> No one expects you to erase from your memory a statement that I struck from the record. That is not possible. But you must remember that you cannot use that piece of information to decide this case in any way or to discuss it at all in that room.

*Id.* at 2,369.

The jury convicted Minett, but unanimously declined to impose the death penalty. Minett was sentenced to life in prison with a thirty-year period of parole ineligibility, and a consecutive five-year sentence for unlawful possession of a handgun with a two-and-one-half-year period of parole ineligibility.

Minett moved for a new trial based on the incurability of prejudice from Leathers's statement. The motion cited the Due Process Clause of the Fourteenth Amendment, and a footnote cited *Bruton v. United States*, 391 U.S. 123 (1968)[1] to argue that limiting

---

[1] In *Bruton*, the Supreme Court held that a trial court's limiting instruction cannot cure violation of a defendant's Sixth Amendment right to confrontation when a non-testifying co-defendant's confession implicates the defendant.

instructions are not always effective.

The trial court denied the motion. The judge found the jury did not react to Leathers's statement:

> I will assume that they heard it because I heard it, and you heard it, and the State heard it. They heard it. As they heard it, though, I didn't see any reaction by anybody up there, truthfully. Now, this is a jury that has reacted on other people. When Mrs. Minett testified, there was [sic] a lot of nods, a lot of knowing looks towards each other. I didn't see any of that thing when this statement occurred.
>
> This was a very short statement by a man – the State is right in that the man had a southern drawl and was not overly loud, but that doesn't mean they didn't hear. There were no nods by the jury, no gasps. None of those things you can say they were astounded by what they heard. You don't know what they thought. No one can tell you that.

Supp. App. at 2,431-32. The judge repeated that the jury understood and followed his limiting instructions. He also stated the admissible portions of Leathers's testimony were likely more damaging to Minett than one inadmissible statement.

Minett appealed his convictions to the Appellate Division of the New Jersey Superior Court. His appeal was based in part on the inadmissibility of the Leathers statement under state rules of evidence and *State v. Brunson*, 625 A.2d 1085 (N.J. 1993). In the conclusion to his brief, Minett invoked his fair trial rights under the Due Process Clause of the Fourteenth Amendment. He cited *Bruton* twice to support his claim that limiting instructions are not always effective. The appellate court, relying exclusively on state law principles and cases, denied Minett's appeal. *See State v. Minett*, No. A-6554-97T1 (N.J. Super. Ct. App. Div. Jan. 28, 2000).

7

Minett petitioned for certification to the New Jersey Supreme Court. Again, his petition was based primarily on state law and rules of evidence, but he invoked the Due Process Clause of the Fourteenth Amendment, and cited *Bruton*. The New Jersey Supreme Court denied review. *See State v. Minett*, 753 A.2d 1153 (N.J. 2000).

Minett filed a petition for writ of habeas corpus in federal court. He claims the trial court violated his fair trial rights under the Due Process Clause of the Fourteenth Amendment by denying his motion for a mistrial. The district court held Minett failed to exhaust his state court remedies because he did not present any federal constitutional legal theory or analysis to the highest state court. The district court also held Minett failed to present a substantively meritorious claim. The district court denied the habeas petition, and declined to issue a certificate of appealability. *See Minett v. Hendricks*, No. 01-CV-3548 (D.N.J. July 25, 2003).

This court granted Minett's motion for a certificate of appealability. The appeal is limited to two issues: 1) Did Minett exhaust his claim in state court by briefly citing the Constitution and *Bruton*? 2) Did the failure of the state court to grant Minett's motion for mistrial deprive Minett of the right to a fair trial under the Due Process Clause of the Fourteenth Amendment?

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction under 28 U.S.C. § 2254, and this court has jurisdiction under 28 U.S.C. §§ 1291 and 2253. Because the district court did not hold an

evidentiary hearing or engage in independent fact-finding, but dismissed Minett's petition based solely on a question of law, the standard of review is plenary. *Scarbrough v. Johnson*, 300 F.3d 302, 305 (3d Cir. 2002), *cert. denied*, 537 U.S. 1052 (2002). A federal court must presume that state court findings of fact are correct, unless they are not fairly supported by the record. *Id.*

The standard of review for a petition for writ of habeas corpus arising out of a state court proceeding is mandated by The Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d) ("AEDPA") and *Williams v. Taylor*, 529 U.S. 362 (2000). A petitioner must establish that the state court proceeding: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

## III. DISCUSSION

Minett contends his brief citations to the Due Process Clause and *Bruton* at trial, on appeal, and in his petition for certification were sufficient to exhaust the fair trial claim in state court. The state contends the recitation of the Due Process Clause and "rote incantation" of "constitutional buzzwords", without additional constitutional analysis, were insufficient to alert the state courts to his federal claim.

The claim must be "fairly presented" to the state courts "by invoking one complete

round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002). A claim is "fairly presented" when there is:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999); *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1232 (3d Cir. 1992).

In most of the cases from the Supreme Court and the Court of Appeals for the Third Circuit cited by the state, the defendant failed to invoke any constitutional provision or case law whatsoever. For example, in *Baldwin v. Reese*, 541 U.S. 27 (2004), defendant raised an ineffective assistance of appellant counsel claim, but failed to identify it as a federal claim and did not cite any federal case law. Similarly, the defendant in *McCandless* made no reference to the federal constitution or case law with regard to the claims the court found exhausted. *McCandless*, 172 F.3d at 262.

It is not sufficient simply to invoke "due process" or "fair trial" rights in the state court. *See Keller v. Larkins*, 251 F.3d 408, 414-415 (3d Cir. 1999). But Minett explicitly invoked the Due Process Clause of the Fourteenth Amendment, and relied on one Supreme Court case by analogy. Minett also presented the factual underpinnings of his federal claim, and we conclude that, while his presentation barely passes muster, he did

10

exhaust his claim in state court.

Moving then to the merits of Minett's petition, he contends the trial court's denial of his motion for mistrial violated his right to a fair trial under the Due Process Clause of the Fourteenth Amendment. Because of the prejudicial nature of Leathers' "other crimes" testimony, weaknesses in the prosecution's case, such as the lack of physical evidence tying Minett to the crime, and the lack of credibility of prosecution's witnesses, he claims the jury would not have convicted him without the "other crimes" testimony, and the judge's limiting instructions could not cure the harm.

Minett cites no Supreme Court cases on point. He argues by analogy to *Bruton*, where the Court held that a trial court's limiting instruction could not cure the violation of a defendant's Sixth Amendment right to confrontation when a non-testifying co-defendant's confession implicated the defendant. The *Bruton* comments on limits to curative instructions do not apply here because Leathers' "other crimes" testimony did not directly implicate Minett in Desch's murder, and Leathers was available for cross-examination.

Minett also cites a footnote in *Greer v. Miller*, 483 U.S. 756 (1987):

We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an "overwhelming probability" that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be "devastating" to the defendant.

*Id.* at 766, n.8 (citations omitted). In *Greer*, the defendant in a murder trial took the

stand, and on cross-examination the prosecutor asked the defendant about his postarrest silence. *Id.* at 759. Counsel for the defendant objected immediately and the court sustained the objection. *Id.* The defendant later moved for a mistrial, but the court denied the motion and gave two curative instructions instead. *Id.* The Supreme Court held the denial of the motion did not violate the defendant's due process rights. *Id.* at 766. "The sequence of events in this case--a single question, an immediate objection, and two curative instructions--clearly indicates that the prosecutor's improper question did not violate Miller's due process rights." *Id.*

Minett ignores that the Court in *Greer* found no due process violation. He also does not show there is an "overwhelming probability" the jury was unable to follow the trial court's instructions, or a "strong likelihood" that the evidence was "devastating" to his case.

Minett also relies on *Moore v. Morton*, 255 F.3d 95 (3d Cir. 2001) (granting defendant new trial where prosecutorial misconduct rendered first trial unfair). While he suggests the prosecutor in this case may have intentionally elicited "other crimes" testimony, the trial court found the testimony inadvertent. Also, the prejudice from Leathers' testimony does not rise to that suffered by the defendant in *Moore*.

The closest case on point cited by Minett is *McKinney v. Rees*, 993 F.2d 1378 (9th Cir. 1993). In *McKinney*, a pre-AEDPA trial, irrelevant "other acts" evidence was erroneously admitted. Here, the trial court immediately struck Leathers' statement and

12

issued curative instructions.  In *McKinney*, the remaining evidence against the defendant was weak.  *Id.* at 1385.  Here, aside from the inadmissible statement, the jury heard substantial testimony from both Leathers and Ward directly inculpating Minett.  Neither *Moore* nor *McKinney* is "clearly established federal law determined by the Supreme Court," required for relief under AEDPA.

Minett cites no Supreme Court case clearly establishing the admission of "other crimes" evidence constitutes a violation of federal fair trial rights.   To the contrary, the most relevant Supreme Court cases suggest the contrary.  *See, e.g., Estelle v. McGuire*, 502 U.S. 62 (1991) (allowing evidence of prior injuries in a trial for infant murder, and refusing habeas relief for a deficient limiting instruction);  *Greer v. Miller*, *supra* (no due process violation for prosecutor's question about defendant's postarrest silence after objection was sustained and limiting instructions given);  *Spencer v. Texas*, 385 U.S. 554 (1967) (rejecting a due process challenge to a state rule admitting evidence of prior similar crimes when the judge gives a limiting instruction).

Minett does not argue there was an unreasonable determination of the facts;  he cannot show a violation of the federal Constitution under the AEDPA standard of review.

## IV.  CONCLUSION

Minett exhausted his state remedies, but his habeas petition is lacking in merit. For reasons other than those relied on by the district court, we affirm the denial of Minett's petition for writ of habeas corpus.